18 P.3d 890

STATE of Hawai'i, Plaintiff–Appellee,

v.

Gene HARRISON, Defendant–Appellant.

No. 20032.

Supreme Court of Hawai'i.

March 2, 2001.

MOON, C.J., LEVINSON, NAKAYAMA, and RAMIL, JJ., and Circuit Judge BLONDIN,[1] Assigned by Reason of Vacancy.

PER CURIAM.

Elizabeth Fisher, counsel of record in *State v. Harrison*, No. 20032, requests attorney's fees and costs in the amount of $8,050.09 pursuant to Hawai'i Revised Statutes (HRS) § 802–5 (1993). Fisher's request concerns fees and expenses incurred in the preparation of a petition for writ of certiorari to the United States Supreme Court. Because HRS § 802–5 was not intended to compensate counsel for services rendered in the preparation of a petition to the United States Supreme Court, we deny Fisher's request.

## I. *BACKGROUND*

On July 29, 1996, defendant-appellant Gene Harrison was convicted of murder in the second degree, place to keep loaded firearm, felon in possession of firearm, and felon in possession of ammunition. On February 3, 1998, this court affirmed Harrison's conviction and sentence by a summary disposition order. The notice and judgment on appeal were filed on March 13, 1998.

During the appeal, Harrison had been represented by Dana Ishibashi, a court-appointed attorney. On February 18, 1998, Ishibashi requested attorney's fees and costs. On February 27, 1998, this court awarded Ishibashi attorney's fees in the reduced amount of $2,500.00 and costs in the requested amount of $213.22.

On April 14, 1998, after this court's filing of the notice and judgment on appeal, the circuit court granted Ishibashi's motion to withdraw as Harrison's counsel. In Ishibashi's place, the circuit court appointed Fisher as Harrison's attorney, based upon the findings and recommendation of the office of the public defender.

On June 19, 1998, the clerk of this court was informed by the clerk of the United States Supreme Court that a petition for writ of certiorari in this case had been filed on June 9, 1998 and had been placed on the Court's docket on June 12, 1998. The United States Supreme Court later denied the petition on October 19, 1998.

On February 24, 1999, Fisher requested attorney's fees and costs for the services rendered to Harrison in connection with the petition for writ of certiorari filed in the United States Supreme Court. This court denied Fisher's motion inasmuch as she had failed to submit documents demonstrating that she was court-appointed counsel for Harrison. On March 1, 1999, Fisher filed a new request for fees and costs with a copy of the appointment documents. Also, on March 17, 1999, Fisher filed a copy of the petition

---

1. Substitute Justice Blondin was assigned by reason of the vacancy created by the resignation of Justice Klein, effective February 4, 2000. On May 19, 2000, Simeon R. Acoba, Jr. was sworn in as associate justice of the Hawai'i Supreme Court. However, Substitute Justice Blondin remains on the above-captioned case, unless otherwise excused or disqualified.

for writ of certiorari filed in the United States Supreme Court.

## II. *DISCUSSION*

### A. *Jurisdiction*

 As an initial matter, we note that appellate jurisdiction in Hawai'i ordinarily terminates upon the appellate court's filing its judgment on appeal. *See State v. Ortiz,* 91 Hawai'i 181, 197, 981 P.2d 1127, 1143, *as amended,* (1999) (citing *McCarthy v. Jaress,* 6 Haw.App. 143, 146, 711 P.2d 1315, 1318 (1985), and Hawai'i Rules of Appellate Procedure (HRAP) Rules 36 and 41(b)). Once the appellate court files its judgment on appeal, the trial court reacquires jurisdiction. *See id.; McCarthy,* 6 Haw.App. at 143, 711 P.2d at 1318. The sole exception to this rule are expressly laid out in HRAP Rule 53, which concerns requests for attorneys' fees and expenses for services rendered specifically before this court, and HRAP Rule 39 for bills of costs.

 Although this court filed its judgment on appeal in the underlying case prior to Fisher's rendering of services, we take jurisdiction of this case through Hawai'i Revised Statutes (HRS) § 602–4 (1993), which states that this court "shall have the general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses therein where no other remedy is expressly provided by law." Similarly, as we declared earlier: "It is our solemn duty to regulate the practice of law in this state. . . ." *Office of Disciplinary Counsel v. Lau,* 79 Hawai'i 201, 207, 900 P.2d 777, 783 (1995). Because there has been no previous discussion with respect to the scope and limits of HRS § 802–5, we take this opportunity to instruct the trial courts and the bar on this issue.

### B. *Principles of Statutory Construction*

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1983) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool. *Gray [v. Admin. Dir. of the Court* ], 84 Hawai'i [138,] 148, 931 P.2d [580,] 590 [(1997)] (quoting *State v. Toyomura,* 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning." HRS § 1–15(2) (1993). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*Ho v. Leftwich,* 88 Hawai'i 251, 256–57, 965 P.2d 793, 798–99 (1998) (quoting *Korean Buddhist Dae Won Sa Temple v. Sullivan,* 87 *Hawai'i* 217, 229–30, 953 P.2d 1315, 1327–28 (1998) (quoting *State v. Cullen,* 86 Hawai'i 1, 8–9, 946 P.2d 955, 963–64 (1997) (some brackets in original))).

### C. *The Language of HRS § 802–5*

HRS § 802–5 delineates the prescribed procedure for appointing and compensating counsel:

(a) When it shall appear to a judge that a person requesting the appointment of counsel satisfies the requirements of this chapter, the judge shall appoint counsel to represent the person at all stages of the proceedings including appeal, if any. If conflicting interests exist, or if the interests of justice require, the court may appoint private counsel, who shall receive reasonable compensation for necessary ex-

penses, including travel, the amount of which shall be determined by the court, and fees pursuant to subsection (b). All such expenses shall be certified by the court. Duly certified claims for payment shall be paid upon vouchers approved by the director of finance and warrants drawn by the comptroller.

(b) The court shall determine the amount of reasonable compensation to appointed counsel, based on the rate of $40 an hour for out-of-court services, and $60 an hour for in-court services and with a maximum fee in accordance with the following schedule:

| | | |
|---|---|---|
| (1) | Any felony case | $3,000 |
| (2) | Misdemeanor case—jury trial | 1,500 |
| (3) | Misdemeanor case—jury waived | 750 |
| (4) | Appeals to the supreme court or intermediate appellate court | 2,500 |
| (5) | Petty misdemeanor case | 450 |
| (6) | Any other type of administrative or judicial proceeding including cases arising under chapter 571 | 1,500 |

Payment in excess of any maximum provided for under paragraphs (1) to (6) may be made whenever the court in which the representation was rendered certifies that the amount of the excess payment is necessary to provide fair compensation and the payment is approved by the administrative judge of such court.

Although the language of HRS § 802–5(a) provides that counsel may be appointed for "all stages of the proceedings," we construe that language in light of the statute as a whole.

HRS § 802–5(b) does not expressly refer to petitions for writs of certiorari before the United States Supreme Court. Although HRS § 802–5(b)(4) mentions "[a]ppeals to the supreme court," the statute also includes the "intermediate appellate court" in the same phrase. Therefore, HRS § 802–5(b)(4) refers to appeals to this court, rather than to the United States Supreme Court. In addition, HRS § 802–5(6) describes "any other type of ... judicial proceeding[.]" Nevertheless, the concomitant references to "administrative" proceedings and proceedings pursu-

ant to HRS chapter 571 indicate that HRS § 802–5(6) relates to proceedings conducted prior to an appeal to this court.

■ Finally, HRS § 802–5(b) allows "payment in excess of the maximum" amounts indicated in the chart if the "court in which the representation was rendered certifies that the amount of the excess payment is necessary to provide fair compensation...." Given this language, we note that it would be presumptuous, if not absurd, for the state legislature to direct the United States Supreme Court, which is the court in which the representation concerning the petition for writ of certiorari was rendered in this case, to review fee requests payable by this state. Accordingly, we hold that the language of HRS § 802–5 does not empower this court to compensate attorneys for services rendered before the United States Supreme Court.

D. *The Legislative History of HRS § 802–5*

In 1981, the legislature enacted Act 22, codified as HRS § 802–5(b). Act 22 originated as Senate Bill 1507, which initially proposed the following schedule of fees:

| | | |
|---|---|---|
| (1) | Class A felony case | $2,000.00 |
| (2) | Any other felony case | 1,500.00 |
| (3) | Misdemeanor case—Jury Trial | 1,000.00 |
| (4) | Misdemeanor case—Jury Waived | 500.00 |
| (5) | Appeals to the Supreme Court or Intermediate Appellate Court | 1,500.00 |
| (6) | Appeals to the United States Supreme Court | 2,000.00 |
| (7) | Petitions for Writs of Certiorari to the United States Supreme Court | 1,000.00 |
| (8) | Briefs to the United States Supreme Court where certiorari has been granted | 2,000.00 |
| (9) | Petty Misdemeanor case | 300.00 |
| (10) | Post conviction proceeding | 1,500.00 |
| (11) | Any other type of administrative or judicial proceeding | 1,000.00 |

■ S.B. 1507 S.D. 1 (emphasis in original omitted and emphasis added). Although Senate Bill 1507 proposed allowances for attorneys rendering services before the United

States Supreme Court for indigent criminal defendants, the House Judiciary Committee amended the bill by intentionally removing the language highlighted above. In so doing, the committee explained, "Your Committee has amended the bill to delete any reference allowing for payments to attorneys who provide services in federal courts. *Your Committee does not believe that the State should pay for such services.*" Hse. Stand. Comm. Rep. No. 876, in 1981 House Journal, at 1309 (emphasis added). As a result, the legislature enacted the schedule of fees without any reference to the United States Supreme Court. Accordingly, the legislative history of HRS § 802–5 expressly indicates that the legislature did not intend to provide compensation for services rendered in a petition for writ of certiorari to the United States Supreme Court.

### E. *This Court's Inherent Power*

■ We have previously recognized that courts have inherent equity, supervisory, and administrative powers as well as inherent power to control the litigation process before them. Inherent powers of the court are derived from the state Constitution and are not confined by or dependent on statute. Among courts' inherent powers are the powers to create a remedy for a wrong even in the absence of specific statutory remedies, and to prevent unfair results. The courts also have inherent power to curb abuses and promote a fair process which extends to the preclusion of evidence and may include dismissal in severe circumstances. It follows that if the trial court has the inherent power to level the ultimate sanction of dismissal, it necessarily has the power to take all reasonable steps short of dismissal, depending on the equities of the case. *Kawamata Farms, Inc. v. United Agri Products,* 86 Hawai'i 214, 242, 948 P.2d 1055, 1083 (1997) (quoting *Richardson v. Sport Shinko (Waikiki Corp.),* 76 Hawai'i 494, 507, 880 P.2d 169, 182 (1994) (citations, internal quotation marks, original brackets, and footnote omitted)). Therefore, although the language and legislative history of HRS § 802–5 do not authorize compensation for services ren-

dered in a petition for writ of certiorari to the United States Supreme Court, this court has the inherent power to compensate attorneys for such services if there is a constitutional need to provide appointed counsel for such petitions.

In *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), the United States Supreme Court held that neither the due process nor equal protection clauses of the fourteenth amendment to the United States Constitution requires states to provide counsel to indigent defendants for the preparation of petitions to the United States Supreme Court. The United States Supreme Court provides counsel to indigent criminal defendants after it grants a petition for a writ of certiorari for purposes of further briefing and oral argument. *See* Robert L. Stern *et al., Supreme Court Practice* § 8.14(b), at 442 (7th ed.1993). The Court, however, has "followed a consistent policy of denying applications for appointment of counsel by persons seeking to file jurisdictional statements or petitions for certiorari." *Ross,* 417 U.S. at 617, 94 S.Ct. 2437 (citations omitted). The Court regards its primary task as addressing unsettled areas of the law, rather than correcting erroneous convictions. Therefore, the United States Supreme Court takes the position that the submission of the untransformed briefs and opinions from the lower courts is sufficient to aid it in its certiorari determination. *See id.* at 615–18, 94 S.Ct. 2437.

■ Given the practice of the United States Supreme Court, we hold that the defendant in this case is not constitutionally entitled to the assistance of counsel for the purpose of preparing a petition for a writ of certiorari to the United States Supreme Court. Thus, we decline to invoke our inherent power to authorize payments for attorneys' fees and costs in excess of the payments authorized by HRS § 802–5(b). Therefore, inasmuch as Fisher's request for compensation appears to be entirely based upon her services rendered in a petition for writ of certiorari to the Supreme Court, Fisher is not entitled to compensation under HRS § 802–5.

### III. *CONCLUSION*

For the reasons discussed above, we deny Fisher's motion for reconsideration of our denial of her request for fees and costs.