114 P.3d 113

**KOREAN BUDDHIST DAE WON
SA TEMPLE OF HAWAI'I,**
Appellant–Appellee,

v.

**CONCERNED CITIZENS OF PĀLOLO,** a
Hawai'i non-profit corporation; and
Life of the Land, Inc., a Hawai'i non-
profit corporation, Appellees–Appel-
lants,

and

**Zoning Board of Appeals of the City
and County of Honolulu,**
Appellee–Appellee.

No. 24497.

Supreme Court of Hawai'i.

June 24, 2005.

Fred Paul Benco, Honolulu, on the briefs, for appellees-appellants, Concerned Citizens of Pālolo, a Hawai'i nonprofit corporation; and Life of the Land, Inc., a Hawai'i nonprofit corporation.

David K. Tanoue, deputy corporation counsel, on the briefs, for appellee-appellee Zoning Board of Appeals of the City and County of Honolulu.

Roger S. Moseley, of Case, Bigelow & Lombardi, Honolulu, on the briefs, for appellant-appellee Korean Buddhist Dae Won Sa Temple of Hawai'i.

Stuart M. Cowan, Honolulu, counsel of record, on the briefs, for appellant-appellee Korean Buddhist Dae Won Sa Temple of Hawai'i.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ., and Circuit Judge IBARRA, in place of ACOBA, J., Recused.

Opinion of the Court by LEVINSON, J.

The appellees-appellants Concerned Citizens of Pālolo [hereinafter, "Concerned Citizens"], a Hawai'i non-profit corporation, and Life of the Land, Inc. [hereinafter, "LOL"], a Hawai'i non-profit corporation [collectively hereinafter, "the Appellants"], appeal from the July 30, 2001 post-judgment order of the circuit court of the first circuit, the Honorable Gary W.B. Chang presiding, regarding the Appellants' July 18, 2000 motion for issuance of order to show cause and for contempt judgment. The Appellants also allege in the points of error section of their opening brief that the circuit court erred in entering the July 6, 2001 decision and post-judgment order granting the March 16, 2001 motion for reconsideration of the appellant-appellee Korean Buddhist Dae Won Sa Temple of Hawai'i [hereinafter, "the Temple"] of (1) the circuit court's September 15, 2000 order regarding the July 18, 2000 motion for issuance of order to show cause and for contempt judgment and (2) the circuit court's January 9, 2001 Order No. 1 modifying the September 15, 2000 order regarding the July 18, 2000 motion for the issuance of an order to show cause and for contempt [hereinafter, "the Temple's motion for reconsideration"] [collec-

tively hereinafter, "the order granting the Temple's motion for reconsideration"].

On appeal, the Appellants argue, *inter alia*, that the circuit court "had no jurisdiction to alter or modify the 66–foot height limitation by the Hawai'i Supreme Court in 1998." The Appellants pray that this court (1) "reverse and remand the July 30, 2001 and July 6, 2001 [o]rders of the [circuit c]ourt," (2) "direct (or order directly) that appropriate fines be levied against the TEMPLE for its defiance since December 1, 1993 or any other such date as this [c]ourt deems just and proper," (3) "direct (or order directly) that the TEMPLE's representatives or some of them be imprisoned unless and until the 66–foot height limitation is completely complied with by the TEMPLE," (4) "direct (or order directly) that the TEMPLE be required to pay [the Appellants'] attorney's fees and costs for this Order to Show Cause and appeal," and (5) "award to [the Appellants] (or, against the TEMPLE) any and all other relief which it deems just and proper."

The appellee-appellee Zoning Board of Appeals of the City and County of Honolulu [hereinafter, "the ZBA"] counters, *inter alia*, that the circuit court "had jurisdiction to clarify the allowable height of the Temple."

The Temple responds, *inter alia*, that it "adopts and incorporates, as if fully set forth herein, the [ZBA's] arguments in their [answering brief.]"

The Appellants reply, *inter alia*, that "neither the [ZBA] nor the Temple address the 'finality' of the Supreme Court's 1998 decision, its affirmance of the [circuit] court's orders, and the resulting consequence that" the circuit court and the Department both lack "jurisdiction to alter or change the order to remove all of the roof 'exceeding 66 feet in height.'"

As discussed *infra* in section III, we hold: (1) that jurisdiction reverted to the ZBA following this court's decision in *Korean Buddhist Dae Won Sa Temple of Hawai'i v. Sullivan*, 87 Hawai'i 217, 953 P.2d 1315 (1998) (*Korean Buddhist Temple II*), such that the circuit court had no authority to consider (a) the Appellants' July 18, 2000 motion for issuance of order to show cause

and for contempt judgment, (b) the Temple's March 16, 2001 motion for reconsideration, and (c) all other related motions; (2) that, because the circuit court rendered (a) the July 6, 2001 decision and order granting the Temple's motion for reconsideration, (b) the July 30, 2001 order regarding the Appellants' July 18, 2000 motion for issuance of order to show cause and for contempt judgment, and (c) all other related orders without jurisdiction, the foregoing orders are void; (3) that, notwithstanding that we do not possess jurisdiction to address the merits of the present matter, we retain jurisdiction to correct the circuit court's error in assuming jurisdiction, such that we leave any future adjudication of the issues raised by the parties to the jurisdiction of the ZBA; and (4) that the Appellants' unsupported prayer for attorney's fees and costs is denied.

Accordingly, we (1) vacate the circuit court's (a) July 6, 2001 decision and order granting the Temple's March 16, 2001 motion for reconsideration, (b) July 30, 2001 order regarding the Appellants' July 18, 2000 motion for the issuance of an order to show cause and for a contempt judgment, and (c) all other related orders and (2) remand this matter to the circuit court to dismiss for lack of jurisdiction (a) the Appellants' July 18, 2000 motion, (b) the Temple's March 16, 2001 motion for reconsideration, and (c) all other related motions.

## I. BACKGROUND

The procedural history of the present matter extends to various events that are immaterial to the resolution of the appeal before us. Accordingly, we set out only the relevant background below.

### A. Initial Building Permits And Agency Enforcement Action

On September 25, 1986, the Honolulu Building Department issued a building permit to the Temple to expand the construction on its compound (then consisting of several buildings, a courtyard, and statuary) in an "R–5" residential district, located at ·Wai'ōmoa'o Road and Halelā'au Place, Pālolo Valley, City and County of Honolulu. The permit authorized the con-

struction of the Hall, which the Temple expected to use for "offices, [a] library, [a] museum and [an] exhibition room intended to further the understanding of the Korean Buddhist religion." The permit approved the Temple's building plans accompanying its permit request, which indicated that the height of the Hall would be approximately sixty-six feet above grade. No revision of the building plans was ever submitted to the Building Department. When the plans were approved, the Comprehensive Zoning Code (CZC) was in effect. CZC § 21–5.4 (1984–1985 Supp.) allowed a maximum height of twenty-five feet above the "high point of the buildable area boundary line" (HBABL). However, after the Hall was actually built, a DLU inspector determined that an extra floor had been built and that the structure's height was seventy-four to seventy-five feet—nine feet higher than authorized by the building permit and 6.88 feet higher than the maximum height allowed by CZC § 21–5.4 (i.e., 6.88 feet over the HBABL plus twenty-five feet). Accordingly, the inspector issued a notice of violation on February 23, 1988, ordering the Temple to stop work on the Hall.

*Korean Buddhist Temple II,* 87 Hawai'i 217, 221–22, 953 P.2d 1315, 1319–20 (1998) (footnotes omitted).

### B. The Temple's First Zoning Variance Application

The Temple filed its first application for a variance on June 15, 1988. The Director denied the application on September 16, 1988, after a public hearing. . . .

The Temple appealed the Director's decision to the ZBA, which affirmed the Director's denial of the variance in an order entered on January 11, 1990. *See Korean Buddhist Dae Won Sa Temple v. Zoning Bd. of Appeals,* 9 Haw.App. 298, 301, 837 P.2d 311, 312, *cert. dismissed,* 74 Haw. 651, 843 P.2d 144 (1992) [ (*Korean Buddhist Temple I* ) ]. The Temple filed an appeal of the ZBA's decision in the circuit court on February 16, 1990. *Id.* at 301, 837 P.2d at 312. The ZBA moved to dismiss the circuit court appeal as untimely. *Id.* at 301, 837 P.2d at 312–13. The circuit court de-

nied the ZBA's motion. The ZBA appealed the circuit court's order denying its dismissal motion to the Intermediate Court of Appeals (ICA), [which] vacated the circuit court's order and remanded with instructions to dismiss the appeal as untimely. *Id.* at 301, 306, 837 P.2d at 312–13, 315.

*Korean Buddhist Temple II*, 87 Hawai'i at 222, 953 P.2d at 1320 (footnotes omitted).

### C. *The Temple's Second Zoning Variance Application And Petition For Declaratory Ruling*

The Temple filed a second variance application for a height overage on February 1, 1993. The Director considered the application "because the rules and regulations pertaining to variance applications permit an applicant to reapply for the same or substantially the same variance one year from the effective date of the denial." Public hearings were held on the 1993 variance application on September 2, 1993 and October 14, 1993.

Despite the Temple's insistence that it was entitled to a trial-like "contested case" hearing, the hearings officer (HO) treated the hearings as "public," allowing all witnesses to testify briefly without being subject to direct or cross-examination....

    . . . .

The Director filed his written "Findings of Fact, Conclusions of Law and Decision and Order" on December 1, 1993, denying the Temple's application for a variance. (Case No. 93/VAR–3)....

    . . . .

[T]he Director denied the Temple's variance application and ordered removal of that portion of the Hall exceeding sixty-six feet in height.

After the hearings on its second variance application, but before the Director's decision was filed, the Temple filed a petition for a declaratory ruling from the Director that the height of the Hall and the setback of the compound's ornamental gate did not violate the applicable zoning code.... The Director declined to enter the requested declaratory ruling, stating that "the Petition raises substantially the same legal and constitutional issues that have been raised

in the Temple's variance petition. Those issues, we believe, will soon be the subject of a ZBA appeal, and possible court review."

*Id.* at 223–26, 953 P.2d at 1321–24 (footnotes omitted).

### D. *The Temple's Appeal To The ZBA Of The Second Application For Zoning Variance*

The Temple appealed the Director's decision and order regarding its request for a variance (Case No. 93/ZBA–8) and his refusal to issue a declaratory ruling as to the legality of the Hall's size (Case No. 93/ZBA–11) to the ZBA on December 23, 1993 and December 30, 1993, respectively. Two community organizations, "Concerned Citizens of Pālolo" and "Life of the Land" (collectively, Concerned Citizens) intervened in the Temple's appeals. In addition, Concerned Citizens appealed that portion of the Director's decision in which he ruled that the Hall would be permitted to remain sixty-six feet in height as a nonconforming use (Case No. 93/ZBA–9). The Temple intervened in this appeal. The Temple also appealed the Director's decision and order on its variance application and his refusal to issue a declaratory ruling directly to the circuit court (Civil No. 93–5050–12) on December 30, 1993, arguing that no appeal lay to the ZBA under the City Charter.

The ZBA held consolidated hearings on the Temple's and Concerned Citizens' appeals over six dates between February 17, 1994 and July 14, 1994....

    . . . .

The ZBA rejected the positions advanced in both of the Temple's appeals, as well as those taken in the appeal of Concerned Citizens, entering findings of fact and conclusions of law similar to those of the Director.

*Id.* at 226–28, 953 P.2d at 1324–26 (footnote omitted). On October 24, 1994, the ZBA entered its findings of fact, conclusions of law, and decision and order sustaining the Director's December 1, 1993 written findings of fact, conclusions of law and decision and order.

**E. The Parties' Appeal Of The ZBA's Decision To The Circuit Court**

.... The parties appealed the ZBA's "Findings of Fact, Conclusions of Law, and Decision and Order" in all three cases to the circuit court. In addition, the Temple filed yet another [1] appeal of the denial of its variance, as well as of the ZBA's decision in Concerned Citizens' appeal [2] in the circuit court, raising largely the same arguments as in its other appeals.

On March 5, 1996, the circuit court filed orders rejecting all five appeals.[3] First, the circuit court dismissed the Temple's appeal to it of the Director's order declining to issue a declaratory ruling, on the basis that it lacked jurisdiction to hear it. *The circuit court further ruled that HAPA did not require the Director to hold a contested case hearing on variance applications under HAPA; instead, the "contested case hearing" prescribed by HRS ch. 91 transpired during the proceeding in the ZBA.*

*Id.* at 228, 953 P.2d at 1326 (emphasis added). As noted *supra* in note 3, on March 5, 1996, the circuit court entered judgment in favor of the ZBA and against the Temple and the Appellants, "as further provided by [the March 5, 1996] ... Decision and Order," and dismissed all other claims.

**F. This Court's Decision In Korean Buddhist Temple II**

"The Temple timely appealed all five orders on March 18, 1996 (including Concerned Citizens' appeal from the ZBA's order, although Concerned Citizens did not itself appeal the circuit court's order ...)." *Korean Buddhist Temple II,* 87 Hawai'i at 229, 953 P.2d at 1327. On April 9, 1998, this court ruled in *Korean Buddhist Temple II* that "[a]ll of the Temple's arguments are without merit" and affirmed the orders of the circuit court rejecting all five of the appeals from the ZBA's findings of fact, conclusions of law, and decision and order sustaining the Director's December 1, 1993 written findings of fact, conclusions of law and decision and order. *Id.* at 217, 953 P.2d at 1315. In its conclusion, *Korean Buddhist Temple II* plainly stated that this court "affirm[ed] the orders of the circuit court." 87 Hawai'i at 249, 953 P.2d at 1347. On May 14, 1998, this

1. *Korean Buddhist Temple II* noted that "an earlier and fourth appeal was filed directly in the circuit court after the Director's initial decision regarding the 1993 variance application." 87 Hawai'i at 228 n. 16, 953 P.2d at 1326 n. 16.

2. *Korean Buddhist Temple II* stated that, "[a]lthough the Temple seems to have prevailed on the issue raised by Concerned Citizens (*i.e.,* whether the Director was allowed to rule that the height of the Hall can exceed the LUO requirements as a nonconforming use), it apparently decided to appeal the decisions of the ZBA and the circuit court on this question anyway." 87 Hawai'i at 228 n. 17, 953 P.2d at 1326 n. 17.

3. The circuit court's March 5, 1996 decision and order provided in relevant part:
   1. The [circuit c]ourt affirms the ZBA's decision in Civil No. 94-4362-11 and the Director's decision, in Case No. 93/VAR-3, denying the Temple's variance request. The overwhelming weight of the evidence supports the decisions. There was no error of law. Moreover, the Temple's representatives engaged in deceitful and "bad faith" conduct.
   2. The Temple also failed to establish that the municipal zoning laws, in question here, placed a "substantial burden" on its religious beliefs and practices. This was the factual foundation necessary to raise "Free Exercise" and First Amendment issues under the Reli-

gious Freedom Restoration Act of 1993 (Public Law 103-141), 42 U.S.C. 2000bb, *et seq.,* and under the state and federal constitutions.
   3. Furthermore, the Temple intentionally created the hardship for which it now claims an exemption.
   4. The [circuit c]ourt's decision in Civil No. 94-4362-11 disposes of the issues raised by the Concerned Citizens.
   5. The [circuit c]ourt's decision in Civil No. 94-4055-10 is also incorporated into this decision.

*ORDER*

Based on the foregoing, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Temple's appeal filed herein shall be denied, and the ZBA's decision, dated October 20, 1994, in Case No. 93/ZBA-9, sustaining the Director, is hereby affirmed.

On the same day, the circuit court entered judgment as follows:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that this [c]ourt affirms the decision of the [ZBA], sustaining the decision of the Director ... in Case No. 93/VAR-3 and that judgment is hereby entered in favor of [the ZBA], and against [the Temple] and [the Appellants], as further provided in by the [circuit c]ourt's Decision and Order, dated Mar[ch] 5, 1996. All other claims are dismissed.

court entered the notice and judgment of appeal stating that "the Decision and Order of the First Circuit Court entered on March 5, 1996 and Judgment filed March 5, 1996 are hereby affirmed."

### G. The Appellants' Motion For Issuance Of Order To Show Cause And For Contempt Judgment

On July 18, 2000, the Appellants filed a motion in the circuit court for the issuance of an order to show cause and for the entry of a contempt judgment and a memorandum in support of the motion. The Appellants did not identify the statute(s) or rule(s) pursuant to which they invoked the circuit court's jurisdiction. Nevertheless, the Appellants, *inter alia,* moved the circuit court

for an Order to Show Cause ... requir[ing the Temple] ... to answer and show cause why it should not be adjudged in contempt of [the circuit court], and upon return of said Order:

1. To adjudge the Temple in contempt of [the circuit court] for having violated and disregarded the terms of the removal Order, as repeatedly affirmed, and

2. To order that the Temple be fined the sum of $1,000.00 for each additional full day of continued violation, unless and until that day that said Temple's roof is reduced in height by 9 feet, and

3. To order the incarceration of the responsible Temple official(s) for civil contempt unless and until said Temple roof is reduced in height by 9 feet, and

4. To order the imposition of attorney[']s fees and costs against the Temple and in favor of [the Appellants] herein for having to enforce the Removal Order, and

5. To order the imposition of such further sanctions or penalties allowable under law as the [circuit court] may deem just and proper.

On August 1, 2000, the ZBA filed a statement of no position as to the Appellants' July 18, 2000 motion, declaring that, "if so requested at the hearing, the [ZBA] can provide the [circuit court] with a summary of [its] efforts to obtain compliance."

On August 2, 2000, the Temple filed a memorandum in opposition to the Appellants' July 18, 2000 motion, maintaining that "[t]he Movants' motion must fail for the basic reason that there is no unequivocal order of [the circuit] court with which [the Temple] has not complied."

On August 10, 2000, the Appellants filed a reply memorandum in support of their July 18, 2000 motion.

On August 23, 2000, the ZBA, at the request of the circuit court, filed a memorandum of law "on the question of whether 'The Department of Planning and Permitting has the authority to enforce the December 1, 1993 Decision of the Director.' " On August 24, 2000, the Appellants filed a supplemental memorandum in support of their July 18, 2000 motion, noting that the circuit court "had requested additional briefing[.]" On August 24, 2000, the Temple, "pursuant to the [circuit c]ourt's request," filed a supplemental memorandum in opposition of the Appellants' July 18, 2000 motion.

On August 29, 2000, the circuit court conducted a hearing on the Appellants' July 18, 2000 motion. After entertaining arguments by counsel for the Temple and the Appellants, as well as a statement by counsel for the ZBA, the circuit court orally ruled on the matter. The circuit court's oral ruling was memorialized in a written order, entered on September 15, 2000.

In its September 15, 2000 order, the circuit court found and ruled as follows:

1. The Decision and Order entered in this case by Judge Wendell K. Huddy on March 5, 1996 (and later affirmed by the Hawai'i Supreme Court on April 9, 1998) had the effect of making the December 1, 1993 Decision and Order of the City Department of Land Utilization ("DLU Order") the ultimate judgment of this [c]ourt.

2. The DLU Order provides that any portion of the building (Main Temple Hall) exceeding 66 feet in height is not allowed and shall be removed.

3. Since April 9, 1998 the record shows that the Temple submitted to the City Department of Permitting and Planning ("DPP") a number of proposals allegedly

to comply with this [c]ourt's judgment. DPP does not approve the protracted nature of the Temple's proposals and prefers a single, integrated proposal.

4. Pending DPP's approval of the Temple's plans, the City has a stop-work order in effect, which prevents any construction work on the Main Temple Hall from being done, which includes work to bring the building into compliance with the law.

5. Therefore, the record is clear that the Main Temple Hall has not yet been brought into compliance with the [c]ourt's Judgment affirming the DLU's December 1, 1993 Order. The record is not so clear that there has been a direct violation of an order of the [c]ourt.

6. The Movant has the burden of proving by clear and convincing evidence that there has been a violation of a court order. This has not yet been done. However, the [c]ourt recognizes the importance of the DLU's December 1, 1993 Order, and the Temple appears motivated to effect compliance.

Therefore, based on the above, this [c]ourt hereby ORDERS, ADJUDGES AND DECREES as follows:

1. That [a Master] ... is appointed ... who will meet with the parties in order to develop a fair timetable within which to effect compliance with the DLU's December 1, 1993 Order.

. . . .

4. The Master shall prepare a report within ninety (90) days of the date this Order is filed, setting for a recommendation for a fair timetable to effect compliance with the DLU's December 1, 1993 Order.

. . . .

7. The Master shall have the authority to issue sanctions for any failure to comply with any request or order issued by the [circuit c]ourt or the Master.

8. Any order issued by the Master shall be immediately appealable by written motion to this [c]ourt on an expedited basis.

9. The [circuit c]ourt is neither granting nor denying the motion.

10. [The Appellants'] request for attorney[']s fees and costs is denied without prejudice.

H. *The Circuit Court's Order No. 1 Modifying Its Order Regarding The Appellants' Motion*

On January 9, 2001, the circuit court entered Order No. 1 modifying the September 15, 2000 order. The January 9 order merely rescheduled the time for the hearing when the circuit court would issue an order regarding the timetable for effecting compliance with the DLU's December 1, 1993 Order (*i.e.,* from Tuesday, December 19, 2000, to Thursday, June 7, 2001) and the deadline for the Master's report (*i.e.,* from Friday, December 15, 2000, to Friday, June 1, 2001).

I. *The Temple's Motion For Reconsideration Of (1) The Circuit Court's Order Regarding The Appellants' Motion And (2) The Circuit Court's Order No. 1 Modifying The Order Regarding The Appellants' Motion*

On March 16, 2001, "pursuant to [Hawai'i Rule of Civil Procedure (HRCP)] Rule 7 [(2001)[4]] ... and/or the general plenary

4. HRCP Rule 7 provides:

**Rule 7. Pleadings allowed; form of motions.**

(a) *Pleadings.* There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.

(b) *Motions and Other Papers.*
(1) An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.
(2) The rules applicable to captions, signing, and other matters of form of pleadings apply to all motions and other papers provided for by these rules.
(3) All motions shall be signed in accordance with Rule 11.

powers of the [circuit c]ourt," the Temple filed (1) a motion for reconsideration of (a) the circuit court's September 15, 2000 order and (b) the circuit court's January 9, 2001 Order No. 1 modifying the September 15, 2000 order and (2) a memorandum in support of the motion. In the Temple's motion for reconsideration, the Temple explained that

[t]he relief sought ... is the modification of said orders to specifically provide that the Department of Planning and Permitting, as successor to the former Department of Land Utilization, of the City and County of Honolulu has the authority to allow [the Temple] to modify its plans for the building in question ("Main Temple Hall") in any way which is consistent with the applicable zoning ordinance (Comprehensive Zoning Code).

On April 12, 2001, the ZBA filed a joinder in the Temple's March 16, 2001 motion for reconsideration, and a memorandum in support of the joinder. In the memorandum, the ZBA stated that its position "as to the amount of footage to be removed from the existing structure of the Temple is 6.2 feet, excluding certain embellishments."

On April 16, 2001, the Appellants filed a memorandum in opposition to the Temple's March 16, 2001 motion for reconsideration. In the memorandum, the Appellants asserted: (1) that the circuit court "does not have

jurisdiction to overrule and negate" (a) "the April 9, 1998 decision of the Hawai'i Supreme Court[,]" (b) "the March 5, 1996 decision and order of Judge Wendell K. Huddy[,]" (c) "the October 20, 1994 decision of the [ZBA,]" and (d) "the December 1, 1993 decision of the Director of the Department of Land Utilization"; and (2) that the circuit "court has no further jurisdiction under [HRCP] Rule 59 [ (2000) [5]] to hear or grant reconsideration."

On April 19, 2001, the Temple filed a reply memorandum regarding its March 16, 2001 motion for reconsideration. The circuit court did not finally adjudicate the Temple's motion for reconsideration until July 6, 2001. *See infra* section I.K.

### J. The Master's Report Regarding A Fair Timetable To Effect Roof Reduction Of The Main Temple Hall

On May 11, 2001, the Master filed his report regarding a fair timetable to effect roof reduction of the main temple hall. On May 30, 2001, the Appellants filed a memorandum in opposition to the Master's May 11, 2001 report.

### K. The Circuit Court's Hearing And Decision And Order Regarding The Temple's Motion For Reconsideration

On April 24, 2001, the circuit court conducted a hearing on the Temple's March 16,

---

(c) *Demurrers, Pleas, etc., Abolished.* Demurrers, pleas, and exceptions for insufficiency of a pleading shall not be used.

5. HRCP Rule 59 provides:
   **Rule 59. New trials; amendment of judgments.**
   (a) *Grounds.* A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the State; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the State. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.
   (b) *Time for Motion.* A motion for a new trial shall be filed no later than 10 days after entry of the judgment.

(c) *Time for Serving Affidavits.* When a motion for new trial is based on affidavits, they shall be filed with the motion. The opposing party has 10 days after service to file opposing affidavits, but that period may be extended for up to 20 days, either by the court for good cause or by the parties' written stipulation. The court may permit reply affidavits.
   (d) *On Court's Initiative; Notice; Specifying Grounds.* No later than 10 days after entry of judgment the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion. After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial, for a reason not stated in the motion. When granting a new trial on its own initiative or for a reason not stated in a motion, the court shall specify the grounds in its order.
   (e) *Motion to Alter or Amend Judgment.* Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment.

2001 motion for reconsideration. After stating that it was inclined to grant the Temple's motion for reconsideration, the circuit court allowed the Appellants' counsel to "make a record." The circuit court then issued its oral ruling, which was memorialized in the July 6, 2001 decision and order granting the Temple's March 16, 2001 motion for reconsideration, finding and ordering as follows:

[T]he [circuit c]ourt hereby finds:

1. *The City and County of Honolulu, Department of Planning and Permitting (formerly Department of Land Utilization) does have continuing jurisdiction with respect to compliance, by [the Temple], with applicable zoning regulations.*

2. The Supreme Court of the State of Hawai'i, in the case of [*Korean Buddhist Temple II*], did not address the question of the number of feet by which the building in question should be *modified*, but *noted* that it had been established that the building was too tall and concluded that a height variance for which the Temple had applied had been properly denied. The Supreme Court, in [*Korean Buddhist Temple II*], ... also upheld the [c]ircuit [c]ourt's prior decision that the building permit for the building in question was still "open."

3. The 6.2–foot reduction of the roof in question now being called for by the City and County of Honolulu Department of Planning and Permitting, pursuant to its June 16, 1999 letter and further explained in its March 6, 2001 letter to the Court–Appointed Master, ... constitutes a modification of the prior position of the Department of Land Utilization to the extent that a position ... on height was articulated in its order respecting the variance. The Department of Planning and Permitting's present position is that the provisions of the Comprehensive Zoning Code, in effect at the time the building permit was issued, constitute[s] the applicable law for purposes of calculating permitted development. This position is based upon case law articulated by the Intermediate Court of Appeals of Hawai'i (*Waikīkī Marketplace Inv. Co. v. Chair of Zoning Bd. of Appeals of City & County of Honolulu*, 86 Hawai'i 343, 949 P.2d 183 (App.1997)), subsequent to formulation of the Department of Land Utilization's prior position and on clarification of the law of the case in the present case. Such a modification is clearly within the jurisdiction and authority of the Department of Planning and Permitting.

4. The [circuit c]ourt, while it may not agree with the style, caption and title of the present motion, should grant the present motion based upon the inherent power to consider factual developments, after a judgment is issued, to modify and shape a fair remedy.

NOW THEREFORE:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the substance of the [Temple's] [m]otion for reconsideration ... be and is hereby GRANTED, and

IT IS FURTHER ORDERED[,] ADJUDGED AND DECREED that the 6.2–foot reduction, of the roof in question, now being required by the Department of Planning and Permitting of the City and County of Honolulu, in its June 16, 1999 letter, is a modification of the prior order of the Director of Land Utilization, which is clearly within the jurisdiction and authority of the Department of Planning and Permitting, and [the Temple] shall comply with such reduction in height, as ordered by the Department of Planning and Permitting of the City and County of Honolulu.

(Emphasis added.)

L. *The Circuit Court's Second Order Regarding The Appellants' Motion For Issuance Of Order To Show Cause And For Contempt Judgment And The Appellants' Notice Of Appeal Therefrom*

On July 30, 2001, the circuit court entered a second order regarding the Appellants' July 18, 2000 motion for the issuance of an order to show cause and for a contempt judgment. The circuit court ordered as follows:

1. By 6–1–01, the City shall lift the 2–23–88 Stop Work Order, which currently

prevents construction on the temple from going forward.

2. By 7–1–01, the Temple is to have a fully executed contract for the Main Hall roof height reduction project. [Note: This provision is advisory, not compulsory.]

3. By 9–1–01, the roof height reduction project shall be completed. "Completed" means the roof is cut at or below the level required by the Department of Planning and Permitting of the City and County of Honolulu.

4. The sanction(s) for the Temple's failure to complete the project by the 9–1–01 deadline shall be imposed as follows:

A. A monetary sanction in the amount of $1,000 a day (including weekends) shall accrue beginning September 2, 2001.

B. The sanction is due and owing and shall be paid by the Temple to the [Appellants] by cashier's check every Friday after September 2, 2001.

. . . .

Payment drafts shall be hand-delivered to [Appellants' counsel's] office by 4:00 p.m. on Friday in order to be deemed timely.

C. The penalty for untimely payment or other noncompliance with any compulsory order is to double the sanction for all late payments.

5. By 7–1–01, roof work should commence. [Note: This provision is advisory, not compulsory.]

6. There shall be a Compliance Hearing on: *Tuesday, 9–4–01 at 3:00 p.m.*

7. Within 30 days from the date this Order is filed, the Master shall provide to the City and Temple an invoice for professional services rendered and expenses incurred in connection with this matter by [the] construction consultant. . . . The City and Temple shall each pay 50% of [the construction consultant's] professional fees and expenses. [The construction consultant's] further fees and expenses shall be borne by the City and the Temple in the same proportion.

8. The Master shall continue to monitor the progress of the roof height reduction project and shall conduct inspections. [The number and timing of the inspections shall be discretionary with the Master.]

(Emphasis and some brackets in original.)

On August 21, 2001, the Appellants timely filed a notice of appeal from the July 30, 2001 order regarding their July 18, 2000 motion for issuance of order to show cause and for contempt judgment.

## II. *STANDARD OF REVIEW*

▬ "The existence of jurisdiction is a question of law that we review *de novo* under the right/wrong standard." *Amantiad v. Odum*, 90 Hawai'i 152, 158, 977 P.2d 160, 166 (1999) (quoting *Lester v. Rapp*, 85 Hawai'i 238, 241, 942 P.2d 502, 505 (1997)) (internal quotation marks omitted). Regarding appellate jurisdiction, this court has noted,

[J]urisdiction is "the base requirement for any court resolving a dispute because without jurisdiction, the court has no authority to consider the case." *Housing Finance & Dev. Corp. v. Castle*, 79 Hawai'i 64, 76, 898 P.2d 576, 588 (1995). With regard to appeals, "[t]he remedy by appeal is not a common law right and exists only by virtue of statutory or constitutional provision." *In re Sprinkle & Chow Liquor License*, 40 Haw. 485, 491 (1954). Therefore, "the right of appeal is limited as provided by the legislature and compliance with the methods and procedure prescribed by it is obligatory." *In re Tax Appeal of Lower Mapunapuna Tenants Ass'n*, 73 Haw. 63, 69, 828 P.2d 263, 266 (1992).

*TSA Int'l Ltd. v. Shimizu Corp.*, 92 Hawai'i 243, 265, 990 P.2d 713, 735 (1999).

*State v. Bohannon*, 102 Hawai'i 228, 232, 74 P.3d 980, 984 (2003) (quoting *State v. Adam*, 97 Hawai'i 475, 481, 40 P.3d 877, 883 (2002)).

Questions regarding subject matter jurisdiction may be raised at any stage of a cause of action. When reviewing a case

where the circuit court lacked subject matter jurisdiction, the appellate court retains jurisdiction, not on the merits, but for the purpose of correcting the error in jurisdiction. A judgment rendered by a circuit court without subject matter jurisdiction is void.

*Lingle v. Hawaii Gov't Employees Ass'n, AFSCME, Local 152, AFL–CIO,* 107 Hawai'i 178, 182, 111 P.3d 587, 591 (2005) (citing *Amantiad v. Odum,* 90 Hawai'i 152, 158–59, 977 P.2d 160, 166–67 (1999) (citations and quotation marks omitted)).

## III. *DISCUSSION*

■ The Appellants assert, *inter alia,* that:

The [circuit c]ourt had no jurisdiction to so casually overrule the prior 13 years of litigation, or to alter or modify the roof reduction to anything other than 66 feet. *Ko'olau Agric. Co., Ltd. v. Comm'n on Water Res. Mgmt.,* 83 Hawai'i 484, 927 P.2d 1367 (1996) (affirmed dismissal of lawsuit based upon lack of jurisdiction).

The Appellants also claim that, "[i]n light of the [Hawai'i] Supreme Court's unanimous affirming of [the] Director['s] 66–foot removal order, the [circuit c]ourt had no jurisdiction to order any remedy other than the removal of all the roof 'exceeding 66 feet.'" We agree with the Appellants that the circuit court lacked jurisdiction. That being so, the circuit court was precluded from considering and ruling on *any* of the motions underlying the present matter.

In *Korean Buddhist Temple II,* this court noted:

Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91–14(g) [ (1993) ] to the agency's decision. . . .

*Bragg v. State Farm Mutual Auto. Ins.,* 81 Hawai'i 302, 304, 916 P.2d 1203, 1205 (1996) (quoting *University of Hawai'i Professional Assembly v. Tomasu,* 79 Hawai'i 154, 157, 900 P.2d 161, 164 (1995)). HRS § 91–14(g) provides:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

HRS § 91–14(g) (1993). "Under HRS § 91–14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3); findings of fact are reviewable under subsection (5); and an agency's exercise of discretion is reviewable under subsection (6)." *Bragg,* 81 Hawai'i at 305, 916 P.2d at 1206.

*Korean Buddhist Temple II,* 87 Hawai'i at 229, 953 P.2d at 1327 (quoting *Konno v. County of Hawai'i,* 85 Hawai'i 61, 77, 937 P.2d 397, 413 (1997)) (emphasis added). By contrast to cases of original jurisdiction in the circuit court, in which the circuit court enters judgment pursuant to HRCP Rule 54 (2000), administrative appeals to the circuit court are disposed of by judgments pursuant to HRCP Rule 72(k) (2000), which provides:

Upon determination of the appeal, the court having jurisdiction shall enter judgment. Such judgment shall be reviewable, or final, as may be provided by law. *Promptly after final determination of the appeal in the circuit court or in the supreme court, the clerk of the court finally determining the case shall notify the gov-*

*ernmental official or body concerned, of the disposition of the appeal.*

(Emphasis added.) Thus, whereas circuit courts may reconsider or enforce HRCP Rule 54 judgments, *see, e.g.,* HRCP Rule 59, *supra* note 5, HRCP Rule 60 (2000), and HRCP Rule 69 (2000), HRCP Rule 72(k) states that, "after final determination of the appeal in the circuit court or in the supreme court," circuit courts are limited to "[p]romptly ... notify[ing] the governmental official or body concerned[ ] of the disposition of the appeal"-no greater jurisdiction is authorized.

It is further noteworthy that HRS § 91–15 (1993), entitled, "Appeals[,]" provides that "[r]eview of any final judgment of the circuit court under this chapter shall be governed by [HRS] chapter 602." HRS Chapter 602, entitled "Courts of Appeal," prescribes, *inter alia,* the jurisdiction and powers of this court. *See generally* HRS § 602–5 (1993).

In that connection, this court has observed that *appellate jurisdiction in Hawai'i ordinarily terminates upon the appellate court's filing its judgment on appeal. See State v. Ortiz,* 91 Hawai'i 181, 197, 981 P.2d 1127, 1143, *as amended,* (1999) (citing *McCarthy v. Jaress,* 6 Haw.App. 143, 146,

711 P.2d 1315, 1318 (1985), and Hawai'i Rules of Appellate Procedure (HRAP) Rules 36 and 41(b)). *Once the appellate court files its judgment on appeal, the trial court reacquires jurisdiction. See id.; McCarthy,* 6 Haw.App. at 143, 711 P.2d at 1318. The sole exception[s] to this rule are expressly laid out in [Hawai'i Rules of Appellate Procedure (HRAP)] Rule 53 [ (2001) [6]], which concerns requests for attorneys' fees and expenses for services rendered specifically before this court, and HRAP Rule 39 [ (2001) [7]] for bills of costs.

*State v. Harrison,* 95 Hawai'i 28, 30, 18 P.3d 890, 892 (2001) (emphases added); [8] *see also Kepo'o v. Kāne,* 106 Hawai'i 270, 280, 103 P.3d 939, 949 (2005) (quoting *Jordan v. Hamada,* 64 Haw. 446, 452, 643 P.2d 70, 72 (1982), which observed, in an appeal from an administrative proceeding, "that as a matter of law and of sound judicial policy, a court which has acquired jurisdiction over a cause retains its power over the same to the exclusion of any court of coordinate jurisdiction *until the court renders a final judgment in the case or until the action is terminated by the parties* " (emphasis added)).

In the present matter, as discussed *supra* in section I.E, the parties appealed the

---

**6.** HRAP Rule 53(b) provided in relevant part that "[p]arties claiming attorneys' fees pursuant to statute or contract may submit requests for the fees no later than 14 days *after entry of judgment.*" (Emphasis added.) Effective January 1, 2004, HRAP Rule 53 was deleted.

**7.** HRAP Rule 39(d) provided in relevant part that "[a] party who desires an award of costs shall state them in an itemized and verified bill of costs, together with a statement of authority for each category of item, filed with the appellate clerk, with proof of service, no later than 14 days *after the entry of judgment.*" (Emphasis added.) Moreover, HRAP Rule 39(a) provides in relevant part that "if an appeal ... is dismissed, costs shall be taxed against the appellant ... upon proper application unless otherwise agreed by the parties or ordered by the appellate court." Effective January 1, 2004, HRAP Rule 39 was amended in respects not relevant to the present matter.

**8.** In *Harrison,* this court ruled as follows:

Although this court filed its judgment on appeal in the underlying case prior to [the events underlying the cause of action before

us], we take jurisdiction of this case through Hawai'i Revised Statutes (HRS) § 602–4 (1993), which states that this court "shall have the general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses therein where no other remedy is expressly provided by law." Similarly, as we declared earlier: "It is our solemn duty to regulate the practice of law in this state...." *Office of Disciplinary Counsel v. Lau,* 79 Hawai'i 201, 207, 900 P.2d 777, 783 (1995). Because there has been no previous discussion with respect to the [issue at bar], we take this opportunity to instruct the trial courts and the bar on this issue.

95 Hawai'i at 30, 18 P.3d at 892. *Harrison* is distinguishable because, as further explained *infra:* (1) in the present matter, the circuit court lacked jurisdiction and could not avail itself of HRS § 602–4, which applies only to *this court;* and (2) the present matter does not involve circumstances "where no other remedy is expressly provided by law," HRS § 602–4, insofar as the Appellants may seek enforcement of the Director's December 1, 1993 findings of fact, conclusions of law, and decision and order by proper motion before the ZBA, which was the "trial court." *See infra.*

ZBA's October 24, 1994 findings of fact, conclusions of law, and decision and order to the circuit court, such that the circuit court was a court of primary appeal, with *appellate* jurisdiction prescribed by HRS § 91–14(g) and HRCP Rule 72. *Cf. Korean Buddhist Temple II*, 87 Hawai'i at 229, 953 P.2d at 1327 (citation omitted). On March 5, 1996, pursuant to HRCP Rule 72(k), the circuit court entered its decision, order and *final judgment* affirming the decision of the ZBA. *See supra* section I.E. The circuit court's decision "ruled that … the 'contested case hearing' prescribed by HRS ch. 91 transpired during the proceeding in the ZBA[,]" thereby confirming that the ZBA was the "trial court" and the circuit court was the court of primary appeal. *Korean Buddhist Temple II*, 87 Hawai'i at 228, 953 P.2d at 1326; *see also supra* section I.E. On secondary appeal to this court, we entered final judgment on May 14, 1998, *affirming* the March 5, 1996 decision, order, and final judgment of the circuit court. *See supra* section I.F.

That being the case, *Korean Buddhist Temple II* neither remanded the present matter to the circuit court nor instructed it to take any further action.[9] Indeed, as we said in *Harrison*, "appellate jurisdiction"— both in the court of primary appeal (*i.e.*, the circuit court) and secondary appeal (*i.e.*, this

court)—"terminate[d] upon the appellate court[s'] filing [of] its judgment[s] on appeal." 95 Hawai'i at 30, 18 P.3d at 892 (citations omitted); *see also Kepo'o*, 106 Hawai'i at 280, 103 P.3d at 949; HRCP Rule 72(k). Further to the foregoing, once this court "file[d] its judgment on appeal, the trial court reacquire[d] jurisdiction." *Harrison*, 95 Hawai'i at 30, 18 P.3d at 892 (citations omitted). As noted *supra*, the ZBA was the "trial court" in the present matter, inasmuch as the ZBA proceeding constituted the requisite contested case hearing. *See Korean Buddhist Temple II*, 87 Hawai'i at 228, 953 P.2d at 1326; *see also supra* section I.E. Moreover, HRCP 72(k) expressly limits the circuit court's jurisdiction following *Korean Buddhist Temple II* to "[p]romptly … notify[ing] the [ZBA] of the disposition of the appeal." Finally, the present matter "concerns [neither an HRAP Rule 53] request[ ] for attorneys' fees and expenses for services rendered specifically before this court, [nor an] HRAP Rule 39 [request] for … costs," such that the "sole exception" to the rule set forth in *Harrison* is not implicated here. *Harrison*, 95 Hawai'i at 30, 18 P.3d at 892.[10]

We therefore hold that, insofar as jurisdiction following *Korean Buddhist Temple II* lay with the ZBA and *not* the circuit court,

---

9. By contrast,

[i]n *State v. Lincoln*, 72 Haw. 480, 825 P.2d 64 (1992), *cert. denied*, 506 U.S. 846, 113 S.Ct. 137, 121 L.Ed.2d 90 (1992), this court observed (1) that *"[i]t is the duty of the trial court, on remand, to comply strictly with the mandate of the appellate court according to its true intent and meaning, as determined by the directions given by the reviewing court,"* and (2) that *"when acting under an appellate court's mandate, an inferior court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; … or intermeddle with it, further than to settle so much as has been remanded."* 72 Haw. at 485–86, 825 P.2d at 68 (internal citations and quotation signals omitted).

*Chun v. Board of Trustees of Employees' Retirement System of State of Hawai'i*, 106 Hawai'i 416, 439, 106 P.3d 339, 362 (2005) (emphases added). As discussed *supra* in section I.F, *Korean Buddhist Temple II* remanded nothing to the circuit court. The mandate of *Korean Buddhist Temple II* was merely that the circuit court's March 5, 1996 decision, order, and judgment was affirmed, such that jurisdiction reverted to the ZBA. *See infra.*

10. As we have noted, the Appellants pray in their opening brief "that this [c]ourt … direct (or order directly) that the TEMPLE be required to pay [the Appellants'] attorney's fees and costs for this Order to Show Cause [ (*i.e.*, the circuit court proceedings) ] and appeal." The Appellants cite no authority in support of their request for attorney's fees and costs, and, for the following reasons, their request cannot be construed as made pursuant to HRAP Rule 53 or 39: (1) whereas the Appellants have requested attorney's fees and costs prior to our disposition of the present matter, HRAP Rule 53 and 39 motions must be filed *after* the entry of judgment in the present matter, *see supra* notes 6 and 7; (2) the Appellants' request violates HRAP Rule 39(d) because the Appellants have failed to file, *inter alia*, "a itemized and verified bill of costs, together with a statement of authority for each category of item," *see supra* note 7; and (3) unless the parties otherwise agree or we later order otherwise, HRAP Rule 39(a) requires that costs be taxed *against* the Appellants, *see supra* note 7, because, as explained *infra*, we are remanding the present matter to the circuit court for dismissal for lack of jurisdiction.

the circuit court "ha[d] no authority to consider," *Bohannon,* 102 Hawai'i at 232, 74 P.3d at 984 (internal citations and quotation signals omitted), (1) the Appellants' July 18, 2000 motion for issuance of order to show cause and for contempt judgment, (2) the Temple's March 16, 2001 motion for reconsideration, and (3) all other related motions. *See also Kepo'o,* 106 Hawai'i at 280, 103 P.3d at 949; HRCP Rule 72(k). Thus, we hold that the circuit court's (1) July 6, 2001 decision and order granting the Temple's motion for reconsideration, (2) July 30, 2001 order regarding the Appellants' July 18, 2000 motion for the issuance of an order to show cause and for a contempt judgment, and (3) all other related orders, which were "rendered by [the] circuit court without . . . jurisdiction[, are] void." *Lingle,* 107 Hawai'i at 182, 111 P.3d at 591 (citation omitted). Moreover, we hold that, insofar as we "retain[ ] jurisdiction, not on the merits, but for the purpose of correcting the [circuit court's] error in [assuming] jurisdiction," *id.* (citation omitted), any future disposition of the issues raised by the parties falls within the jurisdiction of the ZBA. Finally, we hold that the Appellants' unsupported prayer for attorney's fees and costs is denied. *See supra* note 10.

## IV.  CONCLUSION

In light of the foregoing analysis, we (1) vacate the circuit court's (a) July 6, 2001 decision and order granting the Temple's March 16, 2001 motion for reconsideration, (b) July 30, 2001 order regarding the Appellants' July 18, 2000 motion for the issuance of an order to show cause and for a contempt judgment, and (c) all other related orders and (2) remand this matter to the circuit court to dismiss for lack of jurisdiction (a) the Appellants' July 18, 2000 motion, (b) the Temple's March 16, 2001 motion for reconsideration, and (c) all other related motions.