912 P.2d 588

**In the Interest of Jane DOE, born on October 17, 1982; and John Doe, born on August 31, 1983.**

**No. 15825.**

Intermediate Court of Appeals of Hawai'i.

March 1, 1996.

John P. Powell, on the briefs, Kailua–Kona, for appellant father.

Jay K. Goss, John Campbell and Kenneth E. Enright, Deputy Attorneys General, on the brief, Honolulu, for appellee Department of Human Services.

BURNS, C.J., and ACOBA and KIRIMITSU, JJ.

BURNS, Chief Judge.

Jane Doe was born on October 17, 1982. John Doe was born on August 31, 1983. Appeal No. 15825 is an appeal by their father (Father) of the Family Court of the Third Circuit's (Third Circuit Family Court) September 30, 1991 Order Establishing Family Court Jurisdiction and Continuing TFC [Temporary Foster Custody] (September 30, 1991 Order) and December 6, 1991 Order Denying Motion to Reconsider, Alter or Amend Order Establishing Family Court Jurisdiction (December 6, 1991 Order). Both orders were entered in Third Circuit Family Court FC–S[pecial] No. 91–024, a case based on the Child Protective Act (CPA), Hawai'i Revised Statutes (HRS) Chapter 587 (1985).

In 1992, while Father's Appeal No. 15825 was pending, the Third Circuit Family Court transferred its records in FC–S No. 91–024 to the First Circuit Family Court. The First Circuit Family Court divided FC–S No. 91–024 into two separate First Circuit Family Court cases: FC–S No. 89–01365 [1] for Jane Doe, and FC–S No. 92–02414 for John Doe.

The State of Hawai'i's Department of Human Services' (DHS's) May 4, 1995 Motion to Dismiss Appeal (May 4, 1995 Motion) contends that Father's appeal of the Third Circuit Family Court's September 30, 1991 Order and December 6, 1991 Order in FC–S

No. 91–024 is moot. The DHS contends that Father's appeal is moot because the First Circuit Family Court (1) in June 1994, in FC–D[ivorce] No. 88–2056, the case in which the mother (Mother) of Jane Doe and John Doe divorced Father, entered its Amended Order for Post–Decree Relief (June 24, 1994 Order) awarding custody [2] of Jane Doe and John Doe to Mother, and (2) on July 22, 1994, terminated the family court's jurisdiction in FC–S No. 89–01365 and FC–S No. 92–02414.

Father opposes the DHS's May 4, 1995 Motion because he wants appellate review of three findings of fact and one conclusion of law entered by the Third Circuit Family Court in FC–S No. 91–024.

We deny the DHS's May 4, 1995 Motion.

## FACTS

Father and Mother were divorced on January 25, 1989, by a divorce decree entered by the First Circuit Family Court in FC–D No. 88–2056. The divorce decree awarded custody of Jane Doe to Mother (residing in the First Circuit) and custody of John Doe to Father (then residing in the Third Circuit). Both custody awards were subject to the noncustodial parent's rights of reasonable visitation. However, from about September 1990 to April 22, 1991, Jane Doe and John Doe lived in the Third Circuit at either Father's or paternal grandfather's (Grandfather's) residence.

Based on allegations that Father and Grandfather had sexually assaulted Jane Doe and John Doe, the DHS took Jane Doe and John Doe into temporary protective foster custody on April 22, 1991, pursuant to HRS § 571–11(9) (1985) [3] and HRS Chapter 587.[4]

---

1. FC–S No. 89–01365 initially began on May 15, 1989, with a Department of Human Services (DHS) petition in the First Circuit Court for temporary foster custody of Jane Doe. Because FC–S No. 89–01365 overlapped with FC–S No. 91–024, DHS, Guardian ad Litem, Father, and Mother, on October 2, 1989, stipulated to the withdrawal of the petition in FC–S No. 89–01365. FC–S No. 89–01365 reappeared when FC–S No. 91–024 was transferred from the Third Circuit to the First Circuit and was divided into two cases.

2. Except where expressly indicated otherwise, our use of the word custody refers to permanent legal and physical custody.

3. HRS § 571–11(9) (1985) gives the family court exclusive original jurisdiction in proceedings "For the protection of any child under chapter 587."

4. The first paragraph of HRS § 587–1 (1985) states as follows: "This chapter creates within the jurisdiction of the family court a child protective act in order to safeguard, treat, and provide

On April 25, 1991, in FC–S No. 91–024, the DHS petitioned the Third Circuit Family Court for temporary foster custody of Jane Doe and John Doe. The DHS alleged that Jane Doe and John Doe were sexually abused by Grandfather, Grandfather's girlfriend, Father, and Father's friends.

On May 8, 1991, the Third Circuit Family Court appointed a guardian ad litem (GAL) for Jane Doe and John Doe.

On July 31, 1991, August 1, 1991, and August 5, 1991, the Third Circuit Family Court held adjudicatory hearings. Its September 30, 1991 Order decided that "[p]ursuant to Section 587–63 of the Hawaii [Hawai'i] Revised Statutes, the children are children whose psychological health and welfare have been harmed, and are subject to threatened harm by the acts and/or omissions of their family members[,] . . . and the children shall continue under the temporary foster custody of the DHS[.]"

On October 17, 1991, Father filed a Motion to Reconsider, Alter or Amend Order Establishing Family Court Jurisdiction (October 17, 1991 Motion). The Third Circuit Family Court's December 6, 1991 Order denied Father's October 17, 1991 Motion.

On October 24, 1991, the DHS filed a service plan (October 24, 1991 Service Plan). It states in relevant part as follows:

II. *Goal*

The goal of this service plan and agreement is to maintain the children in the home of their mother and provide structured visitation with their father until determination of appropriate legal custody of [John Doe] is resolved.

\* \* \* \* \* \*

IV. *Specific Steps to Achieve Objectives/Responsibilities of the Parties:*

\* \* \* \* \* \*

C. *Parent, [Father], will:*

\* \* \* \* \* \*

9. [Father] will visit with his children only at those times and places arranged through DHS. He will not contact [Mother] or the children directly at any time unless this has been arranged with the social worker and agreed upon in advance by [Mother].

\* \* \* \* \* \*

VII. *SERVICE PLAN REVIEW DATE:*

This Service Plan shall be in effect until April 28, 1992.

\* \* \* \* \* \*

On October 24, 1991, the DHS filed its Safe Home Guidelines stating in relevant part as follows:

### FACTORS TO GUIDELINES

The following information concerns the current situation relevant to each of the 27 guidelines' criteria set forth in HRS [§] 587–25. This report is intended to be reviewed in conjunction with each of the prior reports submitted in this case.

\* \* \* \* \* \*

### SAFE HOME GUIDELINES

\* \* \* \* \* \*

1. . . .

A. . . .

\* \* \* \* \* \*

4) *Degree of "broken trust" between the children and caretaker(s).*

The children were repeatedly told by their father, when they were in his care, that their mother did not want to see them, or that she was dead. The children were confused regarding their mother's place in their lives. They are now with their mother and fear that their father will come and take them away again.

\* \* \* \* \* \*

2. . . .

\* \* \* \* \* \*

B. . . .

. . . [Father] removed the child from Oahu [O'ahu] without her agreement or consent. She was unable to regain physical custody of her daughter after [Father] refused to return her although she repeatedly at-

permanent planning for children who have been

harmed or threatened with harm."

tempted to obtain police assistance to enforce the visitation and custody agreement as ordered by the court. After she found out that the children were on the island of Hawaii [Hawai'i], she feared that if she made any attempt to move them, [Father] would take them out of Hawaii [Hawai'i] and she might never find them again. She was in contact with the children when they were with the grandfather....

\* \* \* \* \* \*

E. *The motive of the perpetrator.*

1) [Father's] beliefs and values are such that he would like to raise his children to be uninhibited regarding sexual matters. It is because [Father] is an adherent of liberal sexual education and practices that he does not perceive that any abuse of his children has occurred.

On November 29, 1991, *nunc pro tunc* to the November 18, 1991 date of the hearing, the Third Circuit Family Court, in FC–S No. 91–024, entered, *inter alia*, the following orders:

1. Foster custody of [Jane Doe] shall terminate and she shall continue under the care, custody and control of her mother, .... [Jane Doe] and her family members shall be placed under the family supervision of the DHS.

2. [John Doe] shall continue under the foster custody of the DHS, with placement at the home of his mother, .... [John Doe] shall not be moved from his mother's home without prior approval from the DHS or the Family Court.

\* \* \* \* \* \*

5. The venue of this case shall be transferred to the Family Court of the First Circuit[.]

HRS § 587–78 (Supp.1992) states that "[a]n interested party aggrieved by any order or decree of the court may appeal as provided by section 571–54." Father filed his notice of appeal on December 18, 1991, and his amended notice of appeal on December 20, 1991.

Hawai'i Family Court Rules Rule 52(a) permits a family court to enter its findings of fact and conclusions of law after the notice of appeal has been filed. On February 26, 1992, the Third Circuit Family Court entered its Findings of Fact and Conclusions of Law. They state in relevant part as follows:

I. *Findings of Fact*

\* \* \* \* \* \*

12. From about November 1990 until April 22, 1991, [Jane Doe and John Doe] lived in the County of Hawaii [Hawai'i] at [Grandfather's] residence and under his care.

13. While [Jane Doe] lived at his residence and was under his care, [Grandfather] had sexual contact and engaged in sexual conduct with [Jane Doe] at least twice. This sexual contact and sexual conduct included [Grandfather] sucking [Jane Doe's] breasts, sucking on her genital area, placing his fingers in her genital area, touching her buttocks and having her squeeze his penis. In addition, [Grandfather] asked that [Jane Doe] suck his penis, but she refused.

14. While [John Doe] was lived [sic] at his residence and was under his care, [Grandfather] had sexual contact and engaged in sexual conduct with [John Doe]. This sexual contact and sexual conduct included [Grandfather] encouraging or at least permitting [John Doe] to stroke [Grandfather's] penis until [Grandfather] ejaculated.

15. Prior to April 1989, when [Jane Doe] was approximately six years old, FATHER had sexual contact or engaged in sexual conduct with [Jane Doe]. The sexual contact or sexual conduct included FATHER rubbing [Jane Doe's] genital area and breasts. In addition, FATHER had [Jane Doe] rub his penis to the point of ejaculation.

16. Initially, in April 1989, [Jane Doe] stated that the sexual contact or sexual conduct with FATHER occurred. Subsequently, in about June 1989, [Jane Doe] retracted her statements. The retraction was procured by MOTHER. Following the retraction, [Jane Doe] again stated that, previously, FATHER had sexual contact or engaged in sexual conduct with her.

17. An incident occurred during which [Jane Doe and John Doe] observed FATHER and his female partner engage in sexual intercourse. After the sexual intercourse was completed, FATHER invited the children into the room and permitted [John Doe] to grab FATHER's penis.

18. According to [John Doe], he grabbed FATHER's penis on more than one occasion. At those times, sometimes FATHER's penis would become stiff.

19. FATHER's lifestyle choices include walking around the house nude in front of the children, permitting the children to walk around the house in the nude, sleeping with the children while he and the children are nude and permitting his female partner to walk around the house nude in front of the children.

## II. Conclusions of Law

1. Under H.R.S. Sec. 587–11, the Family Court has jurisdiction over a child who was or is found within the State of Hawaii [Hawai'i] and whose:

... physical or psychological health or welfare is subject to imminent harm, has been harmed, or is subject to threatened harm by the acts or omissions of the child's family.

2. Under H.R.S. Sec. 587–2, "harm" arises in:

[a]ny case where the child has been the victim of sexual contact or conduct, including, but not limited to, rape, sodomy, molestation, sexual fondling, incest, prostitution; obscene or pornographic photographing, filming, or depiction; or similar forms of sexual exploitation; * * *.

3. Under H.R.S. Sec. 587–2, "family":

... means each legal parent, the natural mother, the natural father, the adjudicated, presumed, or concerned natural father as defined in section 578–2, each parent's spouse, or former spouses, each sibling or person related by consanguinity or marriage, each person residing in the same dwelling unit, and any other person who or legal entity which is a child's physical custodian or guardian, or who is otherwise responsible for the child's care, other than an authorized agency which assumes such a legal status or relationship with the child under this chapter.

\* \* \* \* \* \*

5. The Court finds, based upon the preponderance of the evidence, that [Jane Doe and John Doe] were subject to "harm", as the term is defined under H.R.S. Sec. 587–2, caused by the acts or omissions of [Grandfather]. Specifically, [Grandfather] had sexual contact and engaged in sexual conduct with both children.

\* \* \* \* \* \*

7. The Court finds, based upon the preponderance of the evidence, that [Jane Doe and John Doe] were subject to "harm", as the term is defined under H.R.S. Sec. 587–2, caused by the acts or omissions of FATHER. Specifically, FATHER had sexual contact and engaged in sexual conduct with both children.

\* \* \* \* \* \*

9. Based upon the foregoing, there is an adequate basis for the Court to assume jurisdiction of a child protective proceeding involving [Jane Doe and John Doe] pursuant to H.R.S. Sec. 587–11 and the Court, therefore, sustains the petition for Family Court jurisdiction filed herein in accordance with H.R.S. Sec. 587–63(a).

10. Based upon the facts adduced at the adjudicatory hearing and the record and file in this case, there is reasonable cause to believe that [Jane Doe and John Doe] would be subject to "imminent harm", as the term is defined under H.R.S. Sec. 587–2, if they were placed with either [Grandfather] or FATHER. As such, there is an adequate basis to continue [Jane Doe and John Doe] under the temporary foster custody of the DHS.

On April 24, 1992, the Third Circuit Family Court transferred the venue of FC–S No. 91–024 to the First Circuit Family Court. The First Circuit Family Court then divided

FC–S No. 91–024 into FC–S No. 89–01365 for Jane Doe and FC–S No. 92–02414 for John Doe. On May 27, 1994, in FC–D No. 88–2056, the divorce case, Mother filed an Order to Show Cause for Relief After Order or Decree seeking custody of John Doe. At the June 6, 1994 hearing, the DHS stated that it wanted to terminate foster custody of John Doe, and stipulated to awarding Mother legal custody of John Doe. The DHS's position was supported by Mother and the GAL. Father was present at this hearing and agreed with the DHS's position. Thus, on June 6, 1994, in FC–D No. 88–2056, the First Circuit Family Court entered an Order for Post–Decree Relief (June 6, 1994 Order). On June 24, 1994, in FC–D No. 88–2056, the First Circuit Family Court entered an Amended Order for Post–Decree Relief (June 24, 1994 Amended Order) which provides in relevant part as follows:

I. CUSTODY:

[Mother] is awarded legal custody of the minor children [Jane Doe and John Doe].

[Mother] is awarded physical custody of the minor children [Jane Doe and John Doe], subject to [Father's] right of reasonable visitation as follows: Visitation shall only be allowed by express order of Family Court. The Family Court judge reviewing this matter should review FC–S No. 89–01365 and FC–S No. 92–02414 prior to ordering visitation.

On July 22, 1994, because of the June 24, 1994 Amended Order entered in FC–D No. 88–2056, the First Circuit Family Court entered orders terminating its jurisdiction in FC–S Nos. 89–01365 and 92–02414 (July 22, 1994 Orders).

The DHS's May 4, 1995 Motion contends that the June 24, 1994 Amended Order in FC–D No. 88–2056, and the July 22, 1994 Orders in FC–S Nos. 89–01365 and 92–02414 mooted Father's appeal. We disagree.

DISCUSSION

In its May 4, 1995 Motion, the DHS contends that this appeal by Father of the Third Circuit Family Court's September 30, 1991 Order and December 6, 1991 Order in FC–S No. 91–024, the original CPA case, is moot because (1) the appealed orders asserted jurisdiction over the children but, thereafter, the First Circuit Family Court's June 24, 1994 Amended Order in FC–D No. 88–2056, the divorce case, awarded custody (legal and physical) of both children to Mother; and (2) the July 22, 1994 Orders terminated the First Circuit Family Court's jurisdiction over FC–S Nos. 89–01365 and 92–02414, the successor CPA cases to the appealed Third Circuit Family Court CPA case, FC–S No. 91–024.

We conclude that Father's appeal of FC–S No. 91–024, now FC–S Nos. 89–01365 and 92–02414, is not moot.

The family courts' jurisdiction over children is specified in HRS § 571–11 (1985). That statutory section states in relevant part as follows:

Except as otherwise provided in this chapter, the court shall have exclusive original jurisdiction in proceedings:

\* \* \* \* \* \*

(3) To determine the custody of any child....

\* \* \* \* \* \*

(9) For the protection of any child under chapter 587.

The Third Circuit Family Court's jurisdiction in FC–S No. 91–024, and the First Circuit Family Court's jurisdiction in FC–S Nos. 89–01365 and 92–02414, is authorized by HRS § 571–11(9). The First Circuit Family Court's jurisdiction in FC–D No. 88–2056 is authorized by HRS § 571–11(3).

■ This appeal presents four questions. First, while a family court has jurisdiction over the custody of two children in an HRS § 571–11(9) CPA case, may a family court assert jurisdiction over the custody of those same children in an HRS § 571–11(3) divorce case? Our answer is yes. HRS § 571–11(3) is a general jurisdiction statute. It gives a family court jurisdiction over "the custody of any child[.]" HRS § 571–11(9) is a limited jurisdiction statute. It gives a family court jurisdiction over "children who have been harmed or threatened with harm." See HRS 587–1 (1985). Nothing in statutory or case law prevents a family court from exercising

jurisdiction over a child or children in a divorce case while it or another family court is exercising jurisdiction over the same child or children in a CPA case.

■ Second, while an appellate court has jurisdiction over the father's appeal of the Third Circuit Family Court's orders in an HRS § 571–11(9) CPA case that awarded the custody of one child to the mother and the other child to the DHS, and transferred venue in the case to the First Circuit Family Court, may the First Circuit Family Court, under HRS § 571–11(3) in a divorce case, enter orders pertaining to the custody of those two children? Our answer is yes. Nothing in the statutory or case law prevents a family court from exercising jurisdiction over a child or children under HRS § 571–11(3) in a divorce case while an HRS § 571–11(9) CPA case involving that same child or children is on appeal.

Appeals of orders entered in CPA cases under HRS §§ 571–11(3) and (9) are governed by HRS § 571–54 (1985). It states, in relevant part, as follows:

> The stay of enforcement of an order or decree, or the pendency of an appeal, shall not suspend the order or decree of the court regarding a child or minor or discharge the child or minor from the custody of the court or of the person, institution, or agency to whose care the child or minor has been committed, unless otherwise ordered by the family court, or by the supreme or intermediate appellate court after an appeal is taken. Pending final disposition of the case the family court, or the supreme or the intermediate appellate court after the appeal is taken, may make such order for temporary custody as is appropriate in the circumstances. If the supreme or the intermediate appellate court does not dismiss the proceedings and discharge the child or minor, it shall affirm or modify the order of the family court and remand the child or minor to the jurisdiction of the court for disposition not inconsistent with the supreme or the intermediate appellate court's finding on the appeal.
>
> An order or decree entered in a proceeding based upon section 571–11(1), (2), (6), or (9) shall be subject to appeal to the supreme court only as follows:
>
> Within twenty days from the date of the entry of any such order or decree, any party directly affected thereby may file a motion for a reconsideration of the facts involved. The motion and any supporting affidavit shall set forth the grounds on which a reconsideration is requested and shall be sworn to by the movant or the movant's representative. The judge shall hold a hearing on the motion, affording to all parties concerned the full right of representation by counsel and presentation of relevant evidence. The findings of the judge upon the hearing of the motion and the judge's determination and disposition of the case thereafter, and any decision, judgment, order, or decree affecting the child and entered as a result of the hearing on the motion shall be set forth in writing and signed by the judge. Any party deeming oneself aggrieved by any such findings, judgment, order, or decree shall have the right to appeal therefrom to the supreme court upon the same terms and conditions as in other cases in the circuit court and review shall be governed by chapter 602; provided that no such motion for reconsideration shall operate as a stay of any such findings, judgment, order, or decree unless the judge of the family court so orders; provided further that no informality or technical irregularity in the proceedings prior to the hearing on the motion for reconsideration shall constitute grounds for the reversal of any such findings, judgment, order or decree by the appellate court.

■ Third, while an appellate court has jurisdiction over an appeal of a family court's order pertaining to the custody of two children in an HRS § 571–11(9) CPA case, may a family court terminate jurisdiction in the successor cases to that HRS § 571–11(9) CPA case? Our answer is no. As a general rule, the filing of a valid notice of appeal transfers all jurisdiction in the case to the appellate court and deprives all family courts of jurisdiction to proceed further in the case, except for some matters. *Kama'ole Two Hui v. Aziz Enters., Inc.,* 9 Haw.App. 566,

571, 854 P.2d 232, 235 (1993); 5 Am.Jur.2d, Appellate Review § 421 (1995). While an appellate court has jurisdiction over a family court CPA case, all family courts lack jurisdiction to terminate during-the-appeal and post-appeal jurisdiction in that CPA case.

■ Fourth, did a family court's June 6, 1994 Order and June 24, 1994 Amended Order entered in FC–D No. 88–2056, the divorce case, moot this appeal of a family court's findings, conclusions and orders in FC–S No. 91–024, the original CPA case? Our answer is no. A family court's orders entered in the divorce case mooted the custody and visitation issues in the prior CPA case. But Father's appeal of the CPA case involves more than that.

■ It has been stated that a case is moot if it has " 'lost its character as a present, live controversy[,]' " *Kona Old Hawaiian Trails Group v. Lyman,* 69 Haw. 81, 87, 734 P.2d 161, 165 (1987) (quoting *Hall v. Beals,* 396 U.S. 45, 48, 90 S.Ct. 200, 201–02, 24 L.Ed.2d 214 (1969)), or is determined to be abstract. *In re Thomas,* 73 Haw. 223, 226, 832 P.2d 253, 254 (1992) (citing *Wong v. Board of Regents, University of Hawaii [Hawai'i],* 62 Haw. 391, 394, 616 P.2d 201, 203–04 (1980)).

> Thus, the mootness doctrine is properly invoked where "events ... have so affected the relations between the parties that the two conditions for justiciability relevant on appeal—adverse interest and effective remedy—have been compromised."

*Thomas,* 73 Haw. at 226, 832 P.2d at 254 (citing *Wong,* 62 Haw. at 394, 616 P.2d at 203–04).

■ However, an appeal is not moot if the case appealed has substantial continuing collateral consequences on the appellant. *Carafas v. LaVallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). The June 24, 1994 Amended Order in FC–D No. 88–2056 states in relevant part that "[v]isitation shall only be allowed by express order of [the] Family Court. The Family Court judge reviewing this matter should review FC–S No. 89–01365 and FC–S No. 92–02414 prior to ordering visitation." In other words, in addition to any other impact it may have on his life, the result of Father's appeal will have a direct

impact on his rights to visit his children. Therefore, Father's appeal is not moot.

Consequently, Father's December 18, 1991 appeal of the Third Circuit Family Court's September 30, 1991 Order and December 6, 1991 Order, in FC–S No. 91–024, the original CPA case, which decided that the Third Circuit Family Court had HRS § 571–11(9) jurisdiction over the children, did not preclude the First Circuit Family Court's June 6, 1994 Order and June 24, 1994 Amended Order in FC–D No. 88–2056, but did preclude the First Circuit Family Court's July 22, 1994 Orders terminating its during-the-appeal and post-appeal jurisdiction in FC–S No. 89–01365 and FC–S No. 92–02414, the successor cases to FC–S No. 91–024.

## CONCLUSION

Accordingly, we deny the State of Hawai'i Department of Human Services' May 4, 1995 Motion to Dismiss Appeal No. 15825 of Third Circuit Family Court case FC–S No. 91–024. However, we order the First Circuit Family Court to vacate its July 22, 1994 orders terminating its jurisdiction in First Circuit Family Court cases FC–S No. 89–01365 and FC–S No. 92–02414, the successor cases to Third Circuit Family Court case FC–S No. 91–024.

ACOBA, J., concurs in the result only.