143 P.3d 37

**Duane PREBLE and Marion Everson, Plaintiffs–Appellants,**

v.

**BOARD OF TRUSTEES OF the EMPLOYEES' RETIREMENT SYSTEM OF the STATE OF HAWAI'I, Administrator of the Employees' Retirement System of the State of Hawai'i, and Employees' Retirement System of the State of Hawai'i, Defendants–Appellees.**

**Duane Preble and Marion Everson, Petitioners–Appellants–Appellants,**

v.

**Employees' Retirement System of the State of Hawai'i, Respondent–Appellant–Appellant,**

and

**Board of Trustees of the Employees' Retirement System of the State of Hawai'i, Appellant–Appellant.**

Nos. 26186, 26292.

Supreme Court of Hawai'i.

Sept. 20, 2006.

---

Charles K.Y. Khim, on the briefs, Honolulu, for the petioners-appellants-appellants/plaintiffs-appellants Duane Preble and Marion Everson.

Kevin P.H. Sumida, of Matsui Chung Sumida & Tsuchiyama, on the briefs, Honolulu, for the defendant-appellee David Shimabukuro, Administrator of the ERS and the respondent-appellee-appellee/defendant-appellee ERS.

Kimberly Tsumoto, Deputy Attorney General, on the briefs, for the appellee-appellee/defendant-appellee Board of Trustees of the ERS.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and Circuit Judge ALM, in place of DUFFY, J., Recused.

**500**

Opinion of the Court by LEVINSON, J.

In these consolidated appeals, the petitioners-appellants-appellants/plaintiffs-appellants Duane Preble and Marion Everson [hereinafter, collectively, "the Appellants"] appeal from: (1) the October 3, 2003 judgment of the circuit court of the first circuit, the Honorable Virginia Lea Crandall presiding, in favor of the respondent-appellee-appellee/defendant-appellee Employees' Retirement System of the State of Hawai'i (ERS), the appellee-appellee/defendant-appellee Board of Trustees of the ERS [hereinafter, "the Board"], and the defendant-appellee David Shimabukuro [hereinafter, collectively, "the Appellees"], and (2) the November 18, 2003 judgment of the circuit court of the first circuit, the Honorable Eden Elizabeth Hifo presiding, in favor of the Board and the ERS.

On appeal, the Appellants contend that the circuit court: (1) erred in dismissing No. 26292 on grounds of mootness; and (2) erred in dismissing No. 26186 through misapplication of the primary jurisdiction doctrine and in violation of their right to a hearing.

For the reasons discussed *infra* in section III.A.2, we vacate the circuit court's dismissal of Civ. No. 03–1–1659 (No. 26292) and remand with instructions to: (1) remand to the Board for hearing and further factfinding for the limited purpose discussed *infra* in section III.A.2 and with due regard for the change in the law highlighted therein; and (2) affirm the Board's July 17, 2003 judgment in other respects. For the reasons discussed *infra* in section III.B, we affirm the circuit court's dismissal of Civ. No. 02–1–0832 (No. 26186).

## I. BACKGROUND

On August 18, 1998, the Appellants, who are apparently retired University of Hawai'i

(UH) faculty members, tendered a "complaint"[1] to the Board purporting to be a "class action" against the ERS, alleging that the ERS miscalculated and underpaid certain similarly situated UH professors' pensions and praying that the Board: (1) certify the proposed class; (2) award the class members their recalculated pensions with interest; and (3) award costs and attorney's fees. The Appellants endeavored to define the "class" as "all members of [the ERS], except retired public school principals, vice principals and teachers," who, at the time of retirement, worked less than a twelve-month year but whose monthly salary had been apportioned uniformly throughout the year (the "earned summer salary" method of computing retirement allowance, *see Chun v. Bd. of Trs. of the ERS*, 87 Hawai'i 152, 155 n. 2, 952 P.2d 1215, 1218 n. 2 (1998) ("*Chun II*")).

On January 11, 1999, the ERS administrator, Shimabukuro, wrote to the Board "recommend[ing] that [it]: (1) authorize the ERS staff to utilize the new 'High 3' [Average Final Compensation (]AFC[)] computation methodology for all employees whose annual salaries are prorated over a 12–month period, and (2) authorize retroactive adjustments to the retirees from August 18, 1996," which was presumably the same policy change that the Appellants sought.

On February 8, 1999, the Board met in executive session "to consult with legal counsel regarding issues resulting from and relating to *Chun v*[ ]. [*Bd. of Trs. of*] *ERS* "[2] and unanimously adopted Shimabukuro's recommendations. (Emphasis added.)

On February 16, 2001, the Appellants submitted a motion to the Board "for an order directing the [ERS] … to deduct and pay from the common fund created in the above-

1. The Appellants' filing should have been designated a "petition … for a declaratory order," and the "claimants" should have been styled "petitioners." Hawai'i Administrative Rules §§ 6–20–8 to –9(a) (1993).

2. The Board does not indicate to which of the several "*Chun*" cases it refers. None of this court's four "*Chun*" opinions reached the merits of the ERS's method of computing benefits, but the Board presumably refers here to "*Chun II*," in which we dismissed the ERS's and the

Board's appeal from the circuit court's reversal of a decision of the Board. *See Chun v. Bd. of Trs. of the ERS*, Civ. No. 95–1409 (Haw. 1st Cir. Mar. 11, 1996), *appeal dismissed*, 87 Hawai'i 152, 177, 952 P.2d 1215, 1240 (1998); *Chun v. Bd. of Trs. of the ERS*, 106 Hawai'i 416, 422, 106 P.3d 339, 345 (2005) ("Inasmuch as the … appeal was dismissed, the circuit court's March 11, 1996 judgment remained the final judgment in the case.").

captioned matter of back retirement benefit increases and the share of investment income earned thereon being moved for herein ... attorney's fees for the [Appellants]' attorney." According to the Appellants, in *Chun v. Bd. of Trs. of the ERS*, 92 Hawai'i 432, 992 P.2d 127 (2000) (*"Chun III"*), this court "held that in common fund cases [3] such as the instant case, attorney's fees are awarded to the [petitioners] and their attorney since they prevailed in this matter and since a common fund, which in this case constitutes the back retirement benefits and investment income that will be paid thereon, is created by reason of said case."

On April 3, 2002, the Appellants filed a separate action in the circuit court, captioned as Civil [4] No. 02–1–0832. The Appellants prayed for a writ of mandamus "requir[ing the Appellees] to withhold, as attorney's fees, a percentage of the back retirement pay that [the class is] entitled to." (Citing *Chun III.*) Furthermore, the Appellants alluded to the "futility exception" to the rule of exhaustion of administrative remedies, *see, e.g., In re Doe Children*, 105 Hawai'i 38, 60, 93 P.3d 1145, 1167 (2004): "It is futile to have ... [the Board] decide th[e] issue of attorney's fees because such a motion was filed ... over one year ago without [the Board] taking action on said motion...."

On May 21, 2002, the Appellees, in two separate motions, moved to dismiss Civ. No. 02–1–0832 on the grounds that primary jurisdiction over the question of fees rested with the Board and that only this court has jurisdiction to issue a writ of mandamus against a public officer. (Quoting Hawai'i Revised Statutes (HRS) § 88–23 (1993) [5] ("The general administration and the responsibility for the proper operation of the retirement system ... are vested in [the Board]...."); Hawai'i Administrative Rules (HAR) § 6–20–16(b) (1993) ("The presiding officer shall have the following powers and duties: ... (8) To rule on motions...."); Hawai'i Rules of Appellate Procedure (HRAP) Rule 21(b) ("An application for a writ of mandamus directed to a public officer shall be made by filing a petition with the clerk of the supreme court.... [T]he appellate clerk shall ... submit [the petition] to the supreme court for a determination as to whether it will be entertained."); *Chun v. ERS*, 73 Haw. 9, 12–14, 828 P.2d 260, 262–63 (1992) (*"Chun I"*).) In its own motion, the Board further proposed that "any powers the Board ... may have to award attorney's fees would be discretionary, not ministerial, and thus not subject to mandamus."

Without a hearing, the circuit court granted the Appellees' motions on June 27, 2002 and, by means of its October 3, 2003 judgment, dismissed Civ. No. 02–1–0832 without prejudice.

On September 9, 2002 and June 9, 2003, the Board met in executive session "to consult and discuss with legal counsel regarding ... [the present matter]."

According to the Board's minutes, on July 14, 2003, it "proceeded with ... [Hawai'i Administrative Procedure Act] proceedings" on the Appellants August 18, 1998 petition. On July 17, 2003, the Board filed its "final order," finding and concluding in relevant part:

---

**3.** This court has described the common-benefit doctrine as

> [o]ne of the earliest exceptions to the "American Rule[,]" ... [which "]provides that a private plaintiff, or his [or her] attorney, whose efforts create, discover, increase[,] or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his [or her] litigation, including attorneys' fees."

*Chun III*, 92 Hawai'i at 439 & n. 7, 992 P.2d at 134 & n. 7 (some bracketed material in original and some added) (quoting *Montalvo v. Chang*, 64 Haw. 345, 352–53, 641 P.2d 1321, 1327 (1982)) (noting that the doctrine applies "not only to the classic case in which a lump sum recovery is effected on behalf of the class ... but also to the case where the class action produces a common benefit ... despite the absence of a true 'common fund' "); *see also Schefke v. Reliable Collection Agency, Ltd.*, 96 Hawai'i 408, 449 n. 87, 32 P.3d 52, 93 n. 87 (2001).

**4.** *But see* Rules of the Circuit Courts Rule 1 ("Proceedings in mandamus ... shall be classified under *special proceedings.*" (Emphasis added.)).

**5.** Effective July 1, 2002 and July 1, 2004, the legislature amended HRS § 88–23 in immaterial respects. *See* 2005 Haw. Sess. L. Act 58, §§ 3 and 33 at 114–15, 131; 2002 Haw. Sess. L. Act 128, §§ 3 and 14 at 351, 360.

*FINDINGS OF FACT [(FOFs) ]*

. . . .

6. On or about February 8, 1999, the Board (1) authorized the ERS to utilize a new [AFC] methodology for all employees whose work year is less than a 12–month work year but whose salaries are prorated over a 12–month period so that deducted pay for the non-working months is factored into the AFC calculation, and (2) authorized retroactive adjustments to retirees in said group. . . . The Board's decision was based on . . . *Chun [II]*, which upheld the . . . [c]ircuit [c]ourt's ruling that lump sum summer salary payments of retired principals, vice-principals, and school teachers should be included in their AFC calculations. [The Appellants]' instant [petition] was not the catalyst for the Board's decision.

. . . .

*CONCLUSIONS OF LAW [(COLs) ]*

1. The Board does not have legal authority to certify a class, as requested by [the Appellants], as there is no legal authority that expressly allows (1) such certification, or (2) for class action administrative hearings to take place. . . .

2. The Board does not have legal authority to award attorney's fees and costs, including interest, . . . as no such authority exists in the HRS or [HAR]. Generally, administrative agencies have only the powers expressly granted to them by the legislature, as well as implied or incidental powers that are reasonably necessary to carry out their express powers. Courts disagree as to how much latitude administrative agencies have with respect to implied powers, but any reasonable doubts

. . . should be resolved against the exercise of such authority. . . .

. . . .

4. . . . [T]he Board does not have legal authority to entertain [the Appellants' February 16, 2001 m]otion. . . .

5. Due to the Board's . . . February 8, 1999 decision to utilize a new AFC methodology . . . , [the Appellants]' request . . . for the ERS to make proper and back benefits payments to the aforesaid group of retirees is moot.

(Quoting *Medley Investors, Ltd. v. Lewis*, 465 So.2d 1305, 1306 (Fla.App.1985); *Lyons v. Illinois Dep't of Rev.*, 116 Ill.App.3d 1072, 72 Ill.Dec. 577, 452 N.E.2d 830, 834 (1983); *Pyro Mining Co. v. Kentucky Comm'n on Human Rights*, 678 S.W.2d 393, 395 (Ky. 1984); *Sullivan v. Pennsylvania*, 48 Pa. Cmwlth. 11, 408 A.2d 1174, 1176 (1979); *Seibert v. Clark*, 619 A.2d 1108, 1111 (R.I.1993)) (citing 2 Am.Jur.2d *Administrative Law* § 62 (1994).) Accordingly, the Board dismissed the Appellants' August 18, 1998 petition and denied their February 16, 2001 motion. (Citing HAR § 6–20–10(1)(D) (1993).[6]

On August 13, 2003, the Appellants appealed the Board's July 17, 2003 final decision and order to the circuit court (Civ. No. 03–1–1659). The Appellants subdivided their statement of the case into ten separate counts, but their numerous allegations distill to two points of error: the Board erred in rendering its final order without affording the Appellants (1) a hearing and (2) an "opportunity to submit proposed [FOFs] and exceptions," thereby violating the due process clause of article 1, section 5 of the Hawai'i Constitution and HRS §§ 91–9 (1993), *amended by* Act 76, § 2 (effective May 20, 2003), and 91–11 (1993).[7] (Internal quotation signals omitted.)

6. HAR § 6–20–10, entitled "Consideration of petition," provides in relevant part:

The [B]oard, within a reasonable time after submission of a petition for declaratory relief, shall:
(1) Deny the petition where:
(A) The question is speculative or purely hypothetical and does not involve an existing situation or one which may reasonably be expected to occur in the near future; or
. . . .

(D) The petition requests a ruling on a statutory provision not administered by the board or the matter is not otherwise within the jurisdiction of the board; or
(2) Set the petition for hearing before the board in accordance with [HAR §§ 6–20–8 to –23 (1993) (concerning declaratory orders)].

7. Article I, section 5 of the Hawai'i Constitution provides in relevant part that "[n]o person shall be deprived of . . . property without due process

On September 4, 2003, the Board moved the circuit court to dismiss the Appellants' appeal for lack of jurisdiction. On September 23, 2003, the ERS joined the Board's motion. On October 7, 2003, the Appellants filed memoranda in opposition.

On November 18, 2003, the circuit court (1) granted the Board's September 4, 2003 motion and the ERS's joinder "due to mootness" and (2) entered judgment in favor of the Board and the ERS and against the Appellants. (Citing *Wong v. Bd. of Regents, Univ. of Hawaii,* 62 Haw. 391, 616 P.2d 201 (1980)).

On October 28, 2003 (No. 26186) and December 18, 2003 (No. 26292), the Appellants filed timely notices of appeal to this court. On September 5, 2006, this court consolidated Nos. 26186 and 26292 under No. 26186.

## II. *STANDARDS OF REVIEW*

### A. *Circuit Court's Disposition Of An Appeal From An Agency[8] Decision*

" 'Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91–14(g) [(Supp.2004),[9] *see infra* section II.B] . . . .' " *Korean Buddhist Dae Won Sa Temple of Hawai'i v. Concerned Citizens of Palolo,* 107 Hawai'i 371, 381, 114 P.3d 113, 123 (2005) ("*Korean Temple III*") (emphasis omitted) (quoting *Korean Buddhist Dae Won Sa Temple of*

*Hawaii v. Sullivan,* 87 Hawai'i 217, 229, 953 P.2d 1315, 1327 (1998) ("*Korean Temple II*")).

### B. *Agency Decision*

HRS § 91–14[ ] provides:

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative [FOFs], [COLs], decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

HRS § 91–14(g). . . .

Under HRS § 91–14(g), [COLs] are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3); [FOFs] are reviewable under subsection (5); and an agency's exercise of discretion is reviewable under subsection (6).

---

of law." HRS § 91–9, entitled "Contested cases; notice; hearing; records," provides in relevant part that, "(a) [s]ubject to [HRS § ]91–8.5 [ (concerning mediation in contested cases) ], in any contested case, all parties shall be afforded an opportunity for hearing after reasonable notice." HRS § 91–11 provides in relevant part:

**Examination of evidence by agency.** Whenever in a contested case the officials of the agency who are to render the final decision have not heard and examined all of the evidence, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a proposal for decision . . . has been served upon the parties, and an opportunity has been afforded to each party adversely affected to file exceptions and present argument. . . .

HRS § 91–1(5) (1993) defines a "contested case" as "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing."

**8.** The Board is an "agency" within the meaning of HRS § 91–14(g) (Supp.2004). *See, e.g., Inouye v. Bd. of Trs. of the ERS,* 4 Haw.App. 526, 529, 669 P.2d 638, 641 (1983).

**9.** Effective July 1, 2006, the legislature amended HRS § 91–14 in respects immaterial to the present matter. *See* 2004 Haw. Sess. L. Act 202, §§ 8 and 85 at 921, 948, *amended by* Act 94, § 1 at 1 (2006), *available at* http://capitol.hawaii.gov/sessioncurrent/bills/hb2897_cd1_.pdf.

*Sussel v. Civil Serv. Comm'n,* 74 Haw. 599, 609, 851 P.2d 311, 317 (1993) (citing *Outdoor Circle v. Harold K.L. Castle Trust Estate,* 4 Haw.App. 633, 638–39, 675 P.2d 784, 789 (1983)), *quoted in, e.g., Korean Temple III,* 107 Hawai'i at 381, 114 P.3d at 123; *Tam v. Kaiser Permanente,* 94 Hawai'i 487, 494, 17 P.3d 219, 226 (2001); *Flor v. Holguin,* 94 Hawai'i 70, 76, 9 P.3d 382, 388 (2000); *In re Gray Line Hawai'i, Ltd.,* 93 Hawai'i 45, 53, 995 P.2d 776, 784 (2000); *Potter v. Hawaii Newspaper Agency,* 89 Hawai'i 411, 421–22, 974 P.2d 51, 61–62 (1999); *Korean Temple II,* 87 Hawai'i at 229, 953 P.2d at 1327.

### C. Grant Of Motion To Dismiss Complaint

■ We must ... view a plaintiff's complaint in a light most favorable to him or her in order to determine whether the allegations contained therein could warrant relief under any alternative theory. *Ravelo [v. County of Hawaii],* 66 Haw. [194,] 199, 658 P.2d [883,] 886 [(1983)]. For this reason, ... our consideration is strictly limited to the allegations of the complaint, and we must deem those allegations to be true. *Au [v. Au],* 63 Haw. [210,] 214, 626 P.2d [173,] 177 [(1981)].

*Baehr v. Lewin,* 74 Haw. 530, 545, 852 P.2d 44, 52 (1993), *quoted in Keauhou Master Homeowners Ass'n v. County of Hawai'i,* 104 Hawai'i 214, 218, 87 P.3d 883, 887 (2004); *In re Estate of Rogers,* 103 Hawai'i 275, 280–81, 81 P.3d 1190, 1195–96 (2003).

---

10. Our research reveals no authority, directly or by analogy, for the maintenance of a class action before the Board, *cf.* Hawai'i Rules of Civil Procedure Rules 1 ("Scope of Rules"), 23(a)-(b) ("Class Actions"), 81(i) ("Applicability"), and, on appeal, the Appellants have abandoned their purported representation of an entire class.

11. The ERS also proposes that the Appellants' notice of appeal to this court, statement of jurisdiction, opening brief, and civil appeals docketing statement were fatally defective, citing HRAP Rules 3(c)(2) ("The notice of appeal shall designate the judgment [or] order ... and the court or agency appealed from. A copy of the judgment or order shall be attached as an exhibit."), 12.1("(c) ... The statement of jurisdiction shall show the ... grounds upon which the jurisdiction of the Hawai'i appellate courts is invoked .... (d) ... A copy of the order or judgment shall be attached to the statement."), 28(b)(3) ("There shall be appended to the [opening] brief

### III. DISCUSSION

#### A. No. 26292: Appeal From The Board's Order To The Circuit Court

In their opening brief in No. 26292, the Appellants contend that the circuit court erred in dismissing their appeal as moot. In particular, the Appellants urge that the Board's February 8, 1999 decision did not resolve the question of their [10] entitlement to interest and fees. (Quoting *Midkiff v. Kobayashi,* 54 Haw. 299, 321 & n. 15, 507 P.2d 724, 738 & n. 15 (1973); *In re 2003 & 2007 Ala Wai Blvd.,* 85 Hawai'i 398, 407, 944 P.2d 1341, 1350 (App.1997); *In re Doe,* 81 Hawai'i 91, 99, 912 P.2d 588, 596 (App.1996).)

In their answering briefs, the Board and the ERS insist profusely that the Appellants' appeal was and is moot. (Quoting *Pele Def. Fund v. Puna Geothermal Venture,* 77 Hawai'i 64, 69 n. 10, 881 P.2d 1210, 1215 n. 10 (1994).) (Citing *Bush v. Hawaiian Homes Comm'n,* 76 Hawai'i 128, 133–34, 870 P.2d 1272, 1277–78 (1994); *Chun I,* 73 Haw. 9, 13, 828 P.2d 260, 262 (1992).)

The ERS adds in its answering brief that the Appellants' counsel is not entitled to fees on the merits "[b]ecause there is no certified class and because there will be no class certification in the future." The ERS also seems to argue that the Appellants were not personally aggrieved by the Board's failure to award fees to their attorney and, hence, lacked standing to appeal.[11] (Citing *Collier*

a copy of the judgment, ... [FOFs] and [COLs], order, ... or decision relevant to any point on appeal, unless otherwise ordered by the court."), and 28(b)(4) (requiring "[a] concise statement of the points of error ... stat[ing] ... (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court"). (Citing *Chun III,* 92 Hawai'i at 448, 992 P.2d at 143 (2000); *Acoba v. Gen. Tire, Inc.,* 92 Hawai'i 1, 10, 986 P.2d 288, 297 (1999); *Kawamata Farms, Inc. v. United Agri Prods.,* 86 Hawai'i 214, 235, 248, 948 P.2d 1055, 1076, 1089 (1997); *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 125, 839 P.2d 10, 31 (1992); *In re Miller & Lieb Water Co.,* 65 Haw. 310, 311, 651 P.2d 486, 487 (1982); *Stewart Props. v. Brennan,* 8 Haw. App. 431, 434–35, 807 P.2d 606, 608 (1991); *Lockary v. Kayfetz,* 908 F.2d 543, 549 (9th Cir. 1990); *Pitney Bowes, Inc. v. Mestre,* 701 F.2d 1365, 1374–75 (11th Cir.1983).)

*v. Marshall,* 977 F.2d 93, 94–95 (3d Cir. 1992).)

The Board and the ERS further argue that the Board did not jeopardize a "property interest" of the Appellants and that neither the due process clause nor any statute nor the Board's own regulations entitle the Appellants to a contested case hearing. (Quoting *Bush,* 76 Hawai'i at 134–35, 870 P.2d at 1278–79.) (Citing *Pele Def. Fund v. Puna Geothermal Venture,* 77 Hawai'i 64, 68, 881 P.2d 1210, 1214 (1994).) In fact, the Board maintains, "HAR § 6–20–10[, *see supra* note 6,] expressly permits the Board to deny an unadjudicable petition for declaratory relief without first conducting a hearing." (Emphasis omitted.)

HAR § 6–20–10, *see supra* note 6, implies that the Board need not "[s]et [a] petition for hearing" where the petition raises a "speculative or purely hypothetical" question or "requests a ruling on a ... matter ... not ... within the jurisdiction of the [B]oard." *Compare* HAR § 6–20–10(1)(A), (D) *with id.* para. (2). HRS § 91–9, *see supra* note 7, provides, in turn, for hearings in contested cases. *Aguiar v. Hawaii Hous. Auth.,* 55 Haw. 478, 496, 522 P.2d 1255, 1267 (1974). If either statute or regulation guaranteed these Appellants a hearing and denial of such a hearing was not harmless, the Appellants' appeal to the circuit court was not moot. As a threshold matter, then, we must decide whether the Appellants' petition to the Board presented a colorable and justiciable claim for costs, fees, and/or interest.

### 1. *The Board had no authority to award costs or fees.*

■ Inasmuch as an administrative agency's powers are limited to those delegated to it by the legislature,[12] an agency cannot exercise "general or common law powers," *City of Chicago v. Fair Employment Practices Comm'n,* 65 Ill.2d 108, 2 Ill.Dec. 711, 357 N.E.2d 1154, 1155 (1976).[13] *TIG Ins. Co. v. Kauhane,* 101 Hawai'i 311, 327–28, 67 P.3d 810, 826–27 (App.2003) ("An administrative agency can only wield powers expressly or implicitly granted to it by statute. Implied powers are limited to those reasonably necessary to make [an] express power effective.") (internal quotation signals omitted); *Friends of Nassau County, Inc. v. Nassau County,* 752 So.2d 42, 53 (Fla.Dist.Ct.App.2000).

In *City of Chicago,* the Fair Employment Practices Commission (FEPC) argued that a provision in Illinois's Fair Employment Practices Act, 48 Ill.Rev.Stat. ¶ 858.01(c) (1973) (repealed) ("The commissioner ..., if he finds against the respondent, shall issue ... a recommended order requiring such respondent ... to take such ... actions ... as will eliminate the effect of the practice complained of."), incorporated an implicit power

---

In sum, the ERS seems to say that the Appellants' failure (1) to specify that they appeal from the Board's July 17, 2003 order, as well as the circuit court's November 18, 2003 judgment, and (2) to affix the Board's July 17, 2003 order to their filings deprives this court of appellate jurisdiction and/or surprised the ERS with unanticipated references to proceedings before the Board. This argument is absurd.

Our jurisdiction over No. 26292, in contrast to the circuit court's jurisdiction over the Appellant's direct appeal from the Board, is conferred by HRS § 641–1(a) (1993) ("Appeals shall be allowed in civil matters from all *final judgments ... of circuit ... courts* ..., to the supreme court ..., except as otherwise provided by law ....") (emphasis added), *amended by* 2004 Haw. Sess. L. Act 202, §§ 66 and 85 at 943, 948, *amended by* Act 94, § 1 at 1, *available at* http://capitol.hawaii.gov/sessioncurrent/bills/hb2897_cd1_.pdf. Mindful that the circuit court's judgment was the ruling to be appealed to this court, the Appellants attached the circuit court's judgment to, and referred to it in, their notice of appeal, opening brief, and statement of jurisdiction. The Board's order was not the appealable final ruling in *this* court and, accordingly, we reject the ERS's proposition, which would entice litigants to thicken their filings with unnecessary paper.

**12.** *Cf. Lake Durango Water Co. v. Pub. Utils. Comm'n* (PUC), 67 P.3d 12 (Colo.2003) (where PUC created by *constitution* and legislature "ha[d] not by any statutory enactment restricted [the PUC] in the matter of awarding attorney's fees and other legal costs," holding that "the PUC has the authority to award attorney's fees and costs") (emphasis added) (citing Colo. Const. art. XXV ("[A]ll power to regulate the facilities, service and rates and charges therefor, ... wheresoever situate or operating within the State of Colorado, ... is hereby vested in [the PUC].")).

**13.** We do not concern ourselves here with the scenario whereby parties have agreed to fees contractually or by stipulation.

of the Commission to award attorney fees. 2 Ill.Dec. at 712–13, 357 N.E.2d at 1155–56. The court noted the presumption in favor of the "American rule" and rejected the FEPC's argument, "find[ing] no suggestion that the legislature contemplated the award of attorney fees to the successful complainant." *Id.*, 2 Ill.Dec. at 713, 357 N.E.2d at 1156; *see also Trapp v. United States*, 668 F.2d 1114, 1116 (10th Cir.1977) (noting that, "[w]here Congress has spoken to authorize an award of attorney's fees, it has done so in no uncertain terms" and "declin[ing] to infer from the ambivalent language of" federal statute "authorizing ... 'corrective action' " a ... grant of authority to award attorney's fees); *Cohn v. Dep't of Corr.*, 78 Wash.App. 63, 895 P.2d 857, 859–60 (1995).

■ Similarly, we find no statute or regulation that authorizes fees or costs in the present matter. *See also Brewer v. Dep't of Corr.*, 531 So.2d 978, 980 (Fla.Dist.Ct.App. 1988); *Mander v. Concreform Co., Inc.*, 206 So.2d 662, 664 (Fla.Dist.Ct.App.1968); *Pleasant Valley Sch. Dist. v. Dep't of Cmty. Affairs*, 127 Pa.Cmwlth. 85, 560 A.2d 935, 936 (1989); *Dail v. S.D. Real Estate Comm'n*, 257 N.W.2d 709, 714 (S.D.1977); *cf. Balsley v. N. Hunterdon Reg'l High Sch. Bd. of Educ.*, 225 N.J.Super. 221, 542 A.2d 29, 33 (App.Div.1988) (where statutes "provide[d] that' ... the prevailing party may be awarded a reasonable attorney's fee,' " and "that such actions may be brought in the Division [of Civil Rights]," concluding that agency had authority to grant fees). In fact, reading HRS ch. 88 (concerning pension and retirement systems) as a whole, the express attorney's fees and costs provision in HRS § 88–82 (Supp.2004), concerning appeals from the Board-appointed medical board ("If, in the event of an appeal of a decision of the *medical* board, retirement benefits are awarded to a member ..., the member shall be reimbursed reasonable attorney's fees together with any costs payable by the system.") (emphasis added), compared to the silence of the remainder of the chapter, supports the inference that the legislature did not intend to

empower the Board to award fees and/or costs in the present matter. *See, e.g., Roxas v. Marcos*, 89 Hawai'i 91, 129, 969 P.2d 1209, 1247 (1998) ("[*E* ]*xpressio unius est exclusio alterius*—the express inclusion of a provision implies the exclusion of another ....") (emphasis in original).

Nor do the Appellants themselves suggest any authority beyond the common-benefit doctrine, which this jurisdiction has not applied to (1) administrative agencies, (2) awards of costs, or (3) "class-like" actions on behalf of numerous similarly situated individuals where no "class," in the Hawai'i Rules of Civil Procedure (HRCP) Rule 23 [14] sense, is ever certified.

In sum, we hold that the Board's failure to conduct a hearing was at most harmless error *with respect to the issue of fees and costs.* Concomitantly, the circuit court did not err by effectively affirming the COLs of the Board with respect to fees and costs.

> 2. *In light of a subsequent change in the law, the Appellants are entitled to a hearing before the Board with respect to interest.*

■ Effective January 1, 2004, the legislature enacted HRS § 88–74.5 (Supp.2003), entitled "Finalizing of pensions," which affords interest to any retirant 1′ whose pension is "finalized" late, *i.e.*, "after the sixth calendar month following the month of the retirant's retirement." *See* 2003 Haw. Sess. L. Act 134, §§ 1 and 4 at 318–19. HRS § 88–74.5(a), *amended by* Act 169, §§ 10 and 43 at 9, 88 (2006), *available at* http://capitol.hawaii.gov/sessioncurrent/bills/gb2273_cd1_.pdf, provides in relevant part:

> For pension benefits finalized after the sixth calendar month following the month of the retirant's retirement, an interest payment ... shall be paid to the retirant. Interest shall be calculated on the difference between the amount the retirant is entitled to receive from the retirant's retirement date up to the day the payment is made and the amount the retirant was paid. . . .

---

**14.** HRCP Rule 23(c)(1) provides in relevant part: "As soon as practicable after the commencement of an action brought as a class action, the court

shall determine by order whether it is to be so maintained."

Beginning January 1, 2004, or the first day of the seventh calendar month following the month of retirement, whichever is later, interest payments calculated as simple interest shall be prorated up to the date payment is made. . . .

"No law has any retrospective operation, unless otherwise expressed or obviously intended." HRS § 1–3 (1993). We do not believe that HRS § 88–74.5 clearly manifests an intent on the part of the legislature to retroactively award interest for any period before January 1, 2004. Nevertheless, one who retired before 2004—such as, allegedly, the Appellants—may qualify for interest under HRS § 88–74.5, though only on whatever balance remained unpaid on "January 1, 2004, or the first day of the seventh calendar month following the month of retirement, whichever is later." The record on appeal does not indicate whether the pensions of the Appellants or the alleged similarly situated retirants have been "finalized" or whether they have received any "payments." Accordingly, the Appellants' entitlement to interest turns on unanswered questions of fact, to wit, (1) whether their status as retirants is as they allege and (2) whether any "payments" to which they were entitled were overdue on or after January 1, 2004.

While it might have been more efficient and prudent for the Board and the circuit court to respond to the impending change in the law (the governor signed Act 134 on June 4, 2003, *see* 2003 Haw. Sess. L. at 319), we can hardly consider it error to decline to enforce a law that has not taken effect (yet). On the other hand, for us to affirm the circuit court's determination of mootness simply because the November 18, 2003 judgment "beat" the sunrise of Act 134 by forty-four days would be needlessly technical. In light of today's holding that the Appellants *might* be entitled to interest, further litigation is virtually foreordained. Therefore, notwithstanding our conclusion, *supra* in section III. A.1, that the Appellants lacked a viable basis for *costs* or *fees*, HAR § 6–20–10(2), *see supra* note 6, entitles them to a hearing before the Board to establish their eligibility, or lack thereof, for *interest* pursuant to HRS § 88–74.5(a).

### B. *No. 26186: Mandamus Action In The Circuit Court*

In No. 26186, the Appellants assert: (1) that the circuit court erred by dismissing their complaint without conducting a hearing; and (2) that the Board, rather than the circuit court, had primary jurisdiction over the complaint.[15] In light of our holding that the Appellants were not entitled to attorney's fees, *see supra* section III.A.1, their underlying complaint in Civ. No. 02–1–0832 could not "warrant relief under any alternative theory," *see Baehr,* 74 Haw. at 545, 852 P.2d at 52, and we conclude that the circuit court did not err in dismissing it. *See Aluminum Shake Roofing, Inc. v. Hirayasu,* 110 Hawai'i 248, 256, 131 P.3d 1230, 1238 (2006) (quoting *Taylor–Rice v. State,* 91 Hawai'i 60, 73, 979 P.2d 1086, 1099 (1999)) (" 'This court may affirm a judgment of the [circuit] court on any ground in the record which supports affirmance.' ").

Moreover, the Appellants' direct appeal in No. 26292 during the pendency of their mandamus action obviated the extraordinary remedy of mandamus:

["]A writ of mandamus . . . will not issue unless the petitioner demonstrates . . . a clear and indisputable right to relief and . . . a lack of other means [adequately to] redress the wrong or obtain the requested action. [ ]Such writs . . . are . . . [not] to serve as legal remedies in lieu of normal appellate procedure."

---

15. At the end of their argument section, the Appellants protest that, by relegating them to the primary jurisdiction of the Board, the circuit court overlooked Hawaii's due process clause, under which the Board should be disqualified due to alleged bias. The Appellants demonstrate no evidence of bias in the present record, but refer indirectly to the Board's joinder in No. 25714, in which the Board supposedly "adopt[ed

Shimabukuro]'s argument that there was no merit to the motion for attorney's fees . . . without having a hearing on those matters." However, the Appellants waived this point by not presenting it in their concise statement of the points of error. *See* Hawai'i Rules of Appellate Procedure Rule 28(b)(4). Moreover, because the Appellants had no viable claim to fees, *see supra* section III.A.1, we notice no plain error.

*Evans v. Takao,* 74 Haw. 267, 279, 842 P.2d 255, 261 (1992) (quoting *Breiner v. Takao,* 73 Haw. 499, 502, 835 P.2d 637, 640 (1992)), *cited in Tanaka v. Nagata,* 76 Hawai'i 32, 35, 868 P.2d 450, 453 (1994); *Pelekai v. White,* 75 Haw. 357, 362, 861 P.2d 1205, 1208 (1993); *see also State v. Sakamoto,* 101 Hawai'i 409, 411, 70 P.3d 635, 637 (2003); *State v. Kealaiki,* 95 Hawai'i 309, 313 & n. 4, 22 P.3d 588, 592 & n. 4 (2001); *Straub Clinic & Hosp. v. Kochi,* 81 Hawai'i 410, 414, 917 P.2d 1284, 1288 (1996).

The Board denied the Appellants' petition on July 17, 2003, and the Appellants appealed to the circuit court on August 13, 2003. Concededly, the circuit court's *June 27, 2002* order dismissing the mandamus action (Civ. No. 02–1–0832) predated the Board's July 17, 2003 order in what would become Civ. No. 03–1–1659. Nonetheless, by the time of the circuit court's *October 3, 2003* final judgment in the mandamus case, the Board had disposed of the petition, enabling the Appellants to pursue their direct appeal. Even assuming *arguendo* the Board had subjected the Appellants to unreasonable delay, *see* HAR § 6–20–10, *supra* note 6 (providing for consideration of the petition "within a reasonable time"), the Appellants could have sought—and did seek—redress through "normal appellate procedure" rather than mandamus.

Accordingly, we affirm the circuit court's dismissal of Civ. No. 02–1–0832.

## IV. CONCLUSION

In light of the foregoing analysis, we vacate the circuit court's dismissal of Civ. No. 03–1–1659 and remand with instructions to: (1) remand to the Board for hearing and further factfinding with respect to the Appellants' eligibility, if any, for interest pursuant to HRS § 88–74.5; and (2) affirm the Board's July 17, 2003 judgment in other respects. We affirm the circuit court's dismissal of Civ. No. 02–1–0832.